COURT OF APPEALS OF VIRGINIA


Present:  Judges Clements, Haley and Senior Judge Overton
Argued at Richmond, Virginia


TYRONE ALONZO BULLOCK

                                             OPINION BY
v.      Record No. 0145-05-2        JUDGE JEAN HARRISON CLEMENTS
                                            JULY 5, 2006
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Margaret P. Spencer, Judge

Richard G. White, Jr., for appellant.

Susan M. Harris, Assistant Attorney General (Robert F. McDonnell,
Attorney General, on brief), for appellee.


Tyrone Alonzo Bullock was convicted on his pleas of guilty of two counts of robbery, in

violation of Code § 18.2-58, and two counts of use of a firearm in the commission of a felony, in

violation of Code § 18.2-53.1. The trial court suspended imposition of sentence on the robbery

convictions for twenty years upon certain conditions and sentenced Bullock to consecutive terms

of three and five years' incarceration in the Department of Corrections on the firearm

convictions. On appeal, Bullock contends the trial court erred (1) in refusing to consider the

possibility of allowing him to serve any part of his sentences in a juvenile facility under Code

§ 16.1-272(A)(1)(i) and (2) in concluding it lacked the discretion under Code § 18.2-53.1 to

suspend any portion of the mandatory minimum sentences on the firearm convictions or to set

those sentences to run concurrently. For the reasons that follow, we affirm the judgment of the

trial court.

## I. BACKGROUND

The relevant facts and procedural posture of this case are not in dispute. Using a twelve-gauge shotgun, Bullock robbed Brian Walthall at gunpoint of $40 on February 22, 2004. Approximately thirty minutes later, Bullock robbed William Buckman at gunpoint of $20. Shortly after the second robbery, Bullock was arrested and charged with the two robberies and with using a firearm in the commission of each of the robberies. Bullock was sixteen years old at the time of the offenses.

Bullock was subsequently certified to be tried as an adult in the circuit court, and a grand jury returned indictments charging him with the two robberies and the two related firearm offenses. On September 30, 2004, Bullock pled guilty in the circuit court to all four charges. After hearing a summary of the evidence, the court accepted Bullock's guilty pleas and convicted him of the charges.

At the sentencing hearing, both parties agreed that the trial court had the discretion to sentence Bullock as a serious juvenile offender under Code § 16.1-272 with respect to the robbery convictions. They disagreed, however, as to what discretion the court had with respect to sentencing Bullock for the use of a firearm convictions. Bullock argued that, under Code § 16.1-272(A)(1), the court could and should allow him to serve all or at least part of his sentences on the two firearm convictions as a serious juvenile offender in the Department of Juvenile Justice. The balance of his sentence, if any, he further argued, could then be served as an adult in the Department of Corrections. He further argued that the two mandatory minimum sentences required by Code § 18.2-53.1 could be suspended in whole or in part under Code § 16.1-272(A)(1) or be set to run concurrently with each other. The prosecutor argued that the inflexible "mandatory minimum" provision of Code § 18.2-53.1 precluded application of the discretionary sentencing options in Code § 16.1-272(A)(1) and required that the two mandatory

- 2 -

minimum sentences on the firearm convictions be served consecutively with each other in the Department of Corrections, without suspension or reduction.

At the conclusion of the sentencing hearing, the trial court suspended imposition of sentence on the robbery convictions for twenty years on certain conditions. Stating it lacked the discretion to "suspend any part of the time" of the mandatory minimum sentences required by Code § 18.2-53.1 and that they "must run consecutive[ly]," the court sentenced Bullock to serve consecutive terms of three and five years' incarceration on the use of a firearm convictions. Asked by defense counsel if it would "consider committing [Bullock] under [Code § 16.1-272(A)(1)(i)] so that at least some of th[e] time [would be] in the juvenile system," the court responded: "No, the Court is sentencing him as an adult. The appropriate placement will be determined by the Department of Corrections." Asked by the court if "there [was] anything else," both parties responded in the negative, and the proceedings ended.

This appeal followed.

II. ANALYSIS

This appeal involves the application of Code §§ 18.2-53.1 and 16.1-272(A)(1). Code § 18.2-53.1 provides, in pertinent part, as follows:

> It shall be unlawful for any person to use or attempt to use any . . . shotgun . . . or display such weapon in a threatening manner while committing . . . robbery . . . . Violation of this section shall constitute a separate and distinct felony and any person found guilty thereof shall be sentenced to a mandatory minimum term of imprisonment of three years for a first conviction, and to a mandatory minimum term of five years for a second or subsequent conviction under the provisions of this section. Such punishment shall be separate and apart from, and shall be made to run consecutively with, any punishment received for the commission of the primary felony.

Code § 16.1-272(A)(1) provides as follows:

> In any case in which a juvenile is indicted, the offense for which he is indicted and all ancillary charges shall be tried in the

- 3 -

same manner as provided for in the trial of adults, except as otherwise provided with regard to sentencing. . . .

    1. If a juvenile is convicted of a violent juvenile felony, for that offense and for all ancillary crimes the court may order that (i) the juvenile serve a portion of the sentence as a serious juvenile offender under § 16.1-285.1 and the remainder of such sentence in the same manner as provided for adults; (ii) the juvenile serve the entire sentence in the same manner as provided for adults; or (iii) the portion of the sentence to be served in the same manner as provided for adults be suspended conditioned upon successful completion of such terms and conditions as may be imposed in a juvenile court upon disposition of a delinquency case including, but not limited to, commitment under subdivision 14 of § 16.1-278.8 or § 16.1-285.1.

Because Bullock was a juvenile who was tried and convicted as an adult in the circuit court on two counts of robbery—a "violent juvenile felony" under Code § 16.1-269.1—and two ancillary counts of use of a firearm in the commission of those robberies, both Code § 18.2-53.1 and Code § 16.1-272(A)(1) were facially applicable to Bullock's sentencing. After suspending imposition of sentence on the robbery convictions, the trial court sentenced Bullock "as an adult" to consecutive terms of three and five years' incarceration in the Department of Corrections on the two firearm convictions.

A. The Trial Court's Consideration of Code § 16.1-272(A)(1)(i)

Bullock claims the trial court abused its discretion during sentencing by "refus[ing] to consider the possibility of sentencing [him] to serve part of his sentence[s]" on the use of a firearm convictions in a juvenile correctional facility, as permitted by Code § 16.1-272(A)(1)(i). Bullock concedes "the trial court had the authority to sentence him as it did" under Code § 16.1-272(A)(1)(ii). He asserts, however, that, having "improperly adopted the Commonwealth's position" that Code § 18.2-53.1 precluded Bullock from serving any part of his sentences on the firearm convictions in the juvenile system, the court failed to "give proper consideration" to the sentencing alternative available under Code § 16.1-272(A)(1)(i). Thus,

- 4 -

Bullock contends, this matter should be remanded to the trial court for reconsideration of sentencing. We disagree.

"Absent clear evidence to the contrary in the record, the judgment of a trial court comes to us on appeal with a presumption that the law was correctly applied to the facts." Yarborough v. Commonwealth, 217 Va. 971, 978, 234 S.E.2d 286, 291 (1977); see also Johnson v. Commonwealth, 12 Va. App. 391, 396, 404 S.E.2d 384, 387 (1991) ("On appeal, the judgment of the trial court is presumed correct."). The party alleging reversible error has the burden "to show by the record" that the alleged error occurred. Johnson, 12 Va. App. at 396, 404 S.E.2d at 387; see also Smith v. Commonwealth, 16 Va. App. 630, 635, 432 S.E.2d 2, 6 (1993) ("An appellate court must dispose of the case upon the record and cannot base its decision upon appellant's petition or brief, or statements of counsel in open court.").

For purposes of this appeal, we will assume, without deciding, that the underlying contention implicit in Bullock's claim of error—that the trial court was required, in determining the sentences for Bullock's use of a firearm convictions, to specifically consider the sentencing alternative set forth in Code § 16.1-272(A)(1)(i)—is correct. Nevertheless, we find that the record before us fails to show by clear evidence that the alleged error actually occurred. Indeed, although the record shows the trial court refused to allow Bullock to serve any part of his sentences on the firearm convictions in a juvenile facility, the record fails to support by clear evidence Bullock's assertion that the trial court refused to "consider the possibility" of allowing him to do so.

To the contrary, taken as a whole, the record supports the conclusion that, in determining Bullock's sentences on the firearm convictions, the trial court was aware of and gave consideration to all of the sentencing alternatives set forth in Code § 16.1-272(A)(1). The record demonstrates that Bullock's counsel thoroughly advised the trial court of the sentencing options available to it under Code § 16.1-272(A)(1) and argued at length in favor of the court allowing

Bullock to serve part, if not all, of his sentences in the juvenile system under Code §§ 16.1-272(A)(1)(i) or 16.1-272(A)(1)(iii). Defense counsel specifically advised the court that Bullock "should not be put in the adult system" and that the court could "sentence him as a serious juvenile offender" under Code § 16.1-272(A)(1)(i) and allow him to serve at least the first part, if not all, of his total sentence in the juvenile system. After the trial court announced it was suspending imposition of sentence on the robbery convictions and imposing a total sentence of eight years on the firearm convictions, Bullock's counsel specifically asked if the court would allow Bullock to serve at least some of the imposed sentence in a juvenile facility. The court responded in the negative, stating simply that it was "sentencing [Bullock] as an adult." In other words, having been informed by counsel that Bullock could be properly committed to the Department of Juvenile Justice under Code §§ 16.1-272(A)(1)(i) and 16.1-272(A)(1)(iii) or sentenced to the Department of Corrections as an adult under Code § 16.1-272(A)(1)(ii), the court decided that the sentencing alternative set forth in Code § 16.1-272(A)(1)(ii) was the most appropriate option under the circumstances before it.

There being no clear evidence in it to the contrary, the record thus shows that, in sentencing Bullock "as an adult," in accordance with Code § 16.1-272(A)(1)(ii), the court gave consideration to and ultimately rejected the other sentencing options available under Code § 16.1-272(A)(1). The court's failure, in announcing its decision, to specifically indicate it had considered the sentencing alternative set forth in Code § 16.1-272(A)(1)(i) does not ineluctably lead to the conclusion that the court failed to consider that alternative. Despite being given the opportunity to do so, neither party asked the court to articulate the basis for its decision, and nothing in Code § 16.1-272(A)(1) required the court to make any findings or otherwise expressly indicate that it had considered the sentencing alternative available under Code § 16.1-272(A)(1)(i) before refusing Bullock's request to be sentenced under that section. We

conclude, therefore, that the trial court's refusal to allow Bullock to serve any time in the juvenile system does not constitute a failure by the court to consider the possibility of sentencing him under Code § 16.1-272(A)(1)(i).

Moreover, there is no clear evidence in the record that supports Bullock's assertion that the trial court adopted the Commonwealth's position that the court had to sentence Bullock to the Department of Corrections under Code § 18.2-53.1. Although he provides no factual basis for that assertion, Bullock apparently equates the court's negative response to defense counsel's inquiry whether the court would consider allowing Bullock to serve at least a part of his total sentence for the firearm convictions in the juvenile system with a determination by the court that it lacked the discretion to do so. We will not, however, "fix upon isolated statements of the trial judge taken out of the full context in which they were made, and use them as a predicate for holding the law has been misapplied." Yarborough, 217 Va. at 978, 234 S.E.2d at 291. Indeed, when taken in context with the trial court's other comments in announcing its rulings from the bench, the trial court's statement that it would not consider allowing Bullock to serve any time in a juvenile facility because the court was "sentencing him as an adult" does not support Bullock's assertion that the court adopted the Commonwealth's position.

In declaring it lacked the discretion to suspend Bullock's sentences on the firearm convictions, the trial court stated that it *could not* "suspend any part of the time." In announcing it lacked the discretion to set the two sentences on the firearm convictions to run concurrently, the court stated the two sentences "*must* run consecutive[ly]." (Emphasis added.) The court, however, made no such declaration regarding its discretion when it ruled on Bullock's request to be allowed to serve some part of his sentences in a juvenile facility. The court merely indicated it would not consider sentencing Bullock as a juvenile under Code § 16.1-272(A)(1)(i) because it was "sentencing him as an adult," the sentencing alternative available under Code

§ 16.1-272(A)(1)(ii). Given its earlier comments, it is clear that, had the court believed it lacked the discretion to consider allowing Bullock to serve some part of his sentences as a juvenile offender under Code § 16.1-272(A)(1)(i), it would have said so. It did not, and, there being no clear evidence in the record showing otherwise, we cannot say the court failed to consider the possibility of sentencing Bullock as a serious juvenile offender under Code § 16.1-272(A)(1)(i).

We hold, therefore, that Bullock failed to meet his burden of showing by the record that the alleged error actually occurred. Accordingly, we reject Bullock's claim of error.

### B. The Trial Court's Sentencing Discretion under Code § 18.2-53.1

Bullock contends the trial court erred in concluding it lacked the discretion under Code § 18.2-53.1 to suspend any portion of his sentences on the firearm convictions. According to Bullock, the legislature's amendment of Code § 18.2-53.1 in 2004 permitted the court to suspend his sentences under Code § 16.1-272(A)(1)(iii). Bullock also contends the trial court erred in concluding it lacked the discretion under Code § 18.2-53.1 to set his two mandatory minimum sentences on the firearm convictions to run concurrently with each other.

In considering the merits of Bullock's claims, we are guided by the elementary principle that "[t]he primary objective of statutory construction is to ascertain and give effect to legislative intent." Commonwealth v. Zamani, 256 Va. 391, 395, 507 S.E.2d 608, 609 (1998). Thus, we construe a statute "with reference to its subject matter, the object sought to be attained, and the legislative purpose in enacting it; the provisions should receive a construction that will render it harmonious with that purpose rather than one which will defeat it." Esteban v. Commonwealth, 266 Va. 605, 609, 587 S.E.2d 523, 526 (2003). Furthermore, although "[i]t is a cardinal principle of law that penal statutes are to be construed strictly against the [Commonwealth]" and "cannot be extended by implication, or be made to include cases which are not within the letter and spirit of the statute," Wade v. Commonwealth, 202 Va. 117, 122, 116 S.E.2d 99, 103 (1960), "we will not apply

'an unreasonably restrictive interpretation of the statute' that would subvert the legislative intent expressed therein," Armstrong v. Commonwealth, 263 Va. 573, 581, 562 S.E.2d 139, 144 (2002) (quoting Ansell v. Commonwealth, 219 Va. 759, 761, 250 S.E.2d 760, 761 (1979)).

### 1. Suspension of Sentences

Bullock concedes that Code § 18.2-53.1 requires the imposition of a "mandatory minimum" sentence that, pursuant to Code § 18.2-12.1, may not normally be suspended. Bullock also acknowledges that this Court determined in Green v. Commonwealth, 28 Va. App. 567, 507 S.E.2d 627 (1998), that the inflexible terms of Code § 18.2-53.1 prohibiting suspension of the mandatory sentence imposed for a use of a firearm conviction prevailed over the discretionary terms of Code § 16.1-272(A)(1) permitting suspension of a juvenile offender's sentence. Bullock asserts, however, that Green was superseded by the General Assembly's amendment of Code § 18.2-53.1 in 2004. As amended, Bullock argues, Code § 18.2-53.1 no longer specifically precludes suspension under Code § 16.1-272(A)(1)(iii) of a juvenile offender's sentence for a use of a firearm conviction. Thus, Bullock concludes, the trial court erred in ruling it lacked the discretion to suspend the mandatory minimum sentences imposed for his firearm convictions.

In response, the Commonwealth contends that, notwithstanding the 2004 amendment to Code § 18.2-53.1, this Court's decision in Green still controls and precludes the suspension of Bullock's firearm sentences under Code § 16.1-272(A)(1)(iii). We agree with the Commonwealth.

Consideration of Bullock's contention that the legislature's 2004 amendment to Code § 18.2-53.1 abrogated our decision in Green requires a review of Green and the legislative background of the amendment of Code § 18.2-53.1 that followed. See generally Lucy v. County of Albemarle, 258 Va. 118, 122, 516 S.E.2d 480, 481 (1999) (holding that courts may review the

- 9 -

legislative background of statutes at issue where the statutes "are in apparent conflict and susceptible to differing constructions" and judicial construction is necessary to reconcile them in a manner "consistent with legislative intent"). At the time we examined the application of Code §§ 18.2-53.1 and 16.1-272(A)(1) in Green, Code § 18.2-53.1 provided, in pertinent part, as follows:

> Violation of this section shall constitute a separate and distinct felony and any person found guilty thereof shall be sentenced to a term of imprisonment of three years for a first conviction, and for a term of five years for a second or subsequent conviction under the provisions of this section. Notwithstanding any other provision of law, the sentence prescribed for a violation of the provisions of this section shall not be suspended in whole or in part, nor shall anyone convicted hereunder be placed on probation. Such punishment shall be separate and apart from, and shall be made to run consecutively with, any punishment received for the commission of the primary felony.

The relevant part of Code § 16.1-272(A)(1) provided then, as it does now, that the sentence of a juvenile offender sentenced as an adult may "be suspended conditioned upon successful completion of such terms and conditions as may be imposed in a juvenile court upon disposition of a delinquency case."

Observing in Green that the application of Code §§ 18.2-53.1 and 16.1-272(A)(1) appeared to be in conflict "because one allow[ed] what the other specifically prohibit[ed]," we considered the plain meaning of the terms of the statutes, noting as follows:

> Code § 18.2-53.1 states that courts "shall" sentence one convicted of the use of a firearm in the commission of a felony to a mandatory sentence "notwithstanding any other provision of law." The word "notwithstanding" is defined as "without prevention or obstruction from or by." Webster's Third New International Dictionary 1545 (1993). Given that understanding of the word, we conclude that the terms of Code § 18.2-53.1 are not limited by other incongruous laws because the General Assembly intended Code § 18.2-53.1 to function "without obstruction" from them. Nothing in Code § 16.1-272 contradicts this interpretation.

Green, 28 Va. App. at 569-70, 507 S.E.2d at 628-29. We further noted that Code

§ 16.1-272(A)(1) did "not contain mandatory language as [did] Code § 18.2-53.1" and reasoned

as follows:

> Our interpretation of the statutes is also in concert with our opinion in Lafleur v. Commonwealth, 6 Va. App. 190, 366 S.E.2d 712 (1988). In Lafleur, we interpreted Code § 18.2-53.1 in light of Code § 19.2-311, which allowed alternate sentencing for certain youthful offenders. We found that the purpose of Code § 18.2-53.1 was "'to deter violent criminal conduct rather than to reform the most dangerous class of criminals.'" Id. at 192, 366 S.E.2d at 713 (quoting Ansell v. Commonwealth, 219 Va. 759, 763, 250 S.E.2d 760, 763 (1979)). To apply the juvenile sentencing provisions in place of the mandatory sentence in Code § 18.2-53.1 "would substitute a discretionary penalty for an inflexible one." Id. Because "the General Assembly has directed a contrary policy which courts must follow," we held a mandatory sentence was rightfully imposed. Id. We are under no less a burden to follow the General Assembly's clear mandate in this case.

Green, 28 Va. App. at 570, 507 S.E.2d at 629. For these reasons, we held that "Code § 18.2-53.1

required the trial court to impose [an] . . . unsuspended sentence despite the provisions of Code

§ 16.1-272." Id.

In 2004, the General Assembly of Virginia passed House Bill 1059, whereby Code

§ 18.2-53.1 was amended to its present form by adding the phrase "mandatory minimum" to

describe the terms of imprisonment to be imposed and deleting the sentence "Notwithstanding

any other provision of law, the sentence prescribed for a violation of the provisions of this

section shall not be suspended in whole or in part, nor shall anyone convicted hereunder be

placed on probation." 2004 Va. Acts, c. 461, at 674. In the same bill, the General Assembly

enacted Code § 18.2-12.1, which provides:

> "*Mandatory minimum*" wherever it appears in this Code means, for purposes of imposing punishment upon a person convicted of a crime, that the court shall impose the entire term of confinement, the full amount of the fine and the complete requirement of community service prescribed by law. The court

> shall not suspend in full or in part any punishment described as mandatory minimum punishment.

Id. It is clear, therefore, that, while the 2004 amendment removed the "Notwithstanding any other provision of law" clause from Code § 18.2-53.1, the amended statute retained, under the definition of "mandatory minimum" in Code § 18.2-12.1, its prohibition against suspending any part of the mandatory sentence imposed for a use of a firearm conviction.

In contending the 2004 amendment to Code § 18.2-53.1 abrogated this Court's decision in Green, Bullock relies exclusively on our judgment in Green that the phrase "Notwithstanding any other provision of law" indicated the sentencing provisions of Code § 18.2-53.1 were intended to take precedence over the sentencing provisions of Code § 16.1-272(A)(1) and on the General Assembly's deletion of that phrase when it amended Code § 18.2-53.1 in 2004. The removal of that phrase, Bullock argues, clearly reflected the General Assembly's intent to supersede Green and allow the courts to apply the sentencing provisions of Code § 16.1-272(A)(1)(iii) to suspend any part, if not all, of a juvenile offender's mandatory minimum sentence for a use of a firearm conviction under Code § 18.2-53.1.

Although seemingly sound at first glance, Bullock's argument ultimately fails under closer scrutiny. For one thing, Bullock's exclusive reliance on the removal of the "Notwithstanding any other provision of law" clause from Code § 18.2-53.1 to support his argument that the 2004 amendment abrogated our decision in Green ignores the fact that we based our decision in Green on two separate, independent grounds, only one of which involved the "Notwithstanding any other provision of law" clause. Indeed, after addressing the meaning of the "Notwithstanding any other provision of law" clause in Code § 18.2-53.1, we proceeded in Green to address the application of our rationale in Lafleur regarding the statute's underlying purpose. Green, 28 Va. App. at 570, 507 S.E.2d at 629. Noting that, unlike Code § 16.1-272(A)(1), Code § 18.2-53.1 contained "mandatory language" and that "the purpose of

- 12 -

Code § 18.2-53.1 was "'to deter violent criminal conduct rather than to reform the most dangerous class of criminals,'"" we held that "[t]o apply the juvenile sentencing provisions [in Code § 16.1-272(A)(1)] in place of the mandatory sentence in Code § 18.2-53.1 'would substitute a discretionary penalty for an inflexible one'" in subversion of "the General Assembly's clear mandate" and thwart the statute's purpose, which we could not do. Id. (quoting Lafleur, 6 Va. App. at 192, 366 S.E.2d at 713 (quoting Ansell, 219 Va. at 763, 250 S.E.2d at 763)). As it was unrelated to the "Notwithstanding any other provision of law" clause in Code § 18.2-53.1, this rationale provided a separate, independent basis for our decision in Green.

Because we had a separate, independent basis for our decision in Green that was undisturbed by the 2004 amendment to Code § 18.2-53.1, we cannot say the 2004 amendment reflects an intent by the General Assembly to countermand our decision in Green. See Weathers v. Commonwealth, 262 Va. 803, 805, 553 S.E.2d 729, 730 (2001) ("When the General Assembly acts in an area in which one of its appellate courts already has spoken, it is presumed to know the law as the court has stated it and to acquiesce therein, and if the legislature intends to countermand such appellate decision it must do so explicitly.") Indeed, while the 2004 amendment to Code 18.2-53.1 removed the "Notwithstanding any other provision of law" clause from the statute, it did not add any provision to the statute explicitly allowing the courts to apply Code § 16.1-272(A)(1)(iii) or any other statute to suspend part, if not all, of a mandatory minimum sentence imposed under Code § 18.2-53.1. To the contrary, when read in conjunction with Code § 18.2-12.1, Code § 18.2-53.1 still provides that the trial court "shall impose the entire term of confinement" required by the statute for a firearm conviction and that the court "shall not suspend in full or in part any" of that term of confinement. Plainly, the aforementioned purpose ascribed to Code § 18.2-53.1 in Ansell, Lafleur, and Green—"to deter violent criminal conduct

rather than to reform the most dangerous class of criminals"—remains unchanged, despite the 2004 amendment. To read the amended statute as Bullock urges would undermine that purpose.

We conclude, therefore, that, notwithstanding the 2004 amendment to Code § 18.2-53.1, our decision in Green remains valid and precludes the courts from applying Code § 16.1-272(A)(1)(iii) to suspend any part of a mandatory minimum sentence imposed under Code § 18.2-53.1.

The legislative background of the 2004 amendment to Code § 18.2-53.1 further buttresses this conclusion. While it is true that, "in the field of statutory construction, a presumption normally arises that a change in law was intended when new provisions are added to prior legislation by an amendatory act," Boyd v. Commonwealth, 216 Va. 16, 20, 215 S.E.2d 915, 918 (1975) (per curiam), no such presumption arises where "there is clear indication that the General Assembly intended that the legislation declare or explain existing law," Chappell v. Perkins, 266 Va. 413, 420, 587 S.E.2d 584, 587-88 (2003) (citing Boyd, 216 Va. at 20, 215 S.E.2d at 918). Here, the legislative background of the 2004 amendment of Code § 18.2-53.1 clearly demonstrates that the amendment to Code § 18.2-53.1 was not a "change[] of substance, which add[ed] rights to, or withdr[e]w existing rights from, an original act," but rather a "change[] of form, which merely interpreted" the existing law. Boyd, 216 Va. at 20, 215 S.E.2d at 918.

As previously mentioned, the General Assembly amended Code § 18.2-53.1 and enacted Code § 18.2-12.1 in House Bill 1059. See 2004 Va. Acts, c. 461, at 674. In the same bill, the General Assembly amended twenty-five other existing statutes involving mandatory penalties. See id. at 673-90. All but one of the statutes amended by the General Assembly in House Bill 1059 were altered to include the specific phrase "mandatory minimum," or to exclude language made redundant by the inclusion of the definition of that phrase in Code § 18.2-12.1, or, like Code § 18.2-53.1, to do both. See id.; Code §§ 4.1-305; 18.2-36.1; 18.2-51.1; 18.2-57; 18.2-121;

- 14 -

18.2-154; 18.2-248; 18.2-248.01; 18.2-248.1; 18.2-248.5; 18.2-255; 18.2-255.2; 18.2-270; 18.2-308.1; 18.2-308.2; 18.2-308.2:2; 18.2-308.4; 19.2-120; 30-19.1:4; 46.2-301; 46.2-341.28; 46.2-357; 46.2-391; 53.1-203.  The remaining statute was amended, for apparent stylistic purposes, by rearranging the passage therein containing the phrase "mandatory minimum."  See 2004 Va. Acts, c. 461, at 689; Code § 53.1-116.

According to the legislative summary accompanying House Bill 1059, the amendments set forth in House Bill 1059 were enacted in response to recommendations by the Virginia State Crime Commission based on its study of Title 18.2.  See House Bill 1059, Mandatory minimum punishment; definition (2004), available at http://leg1.state.va.us/041/lis.htm.  The Crime Commission recommended "amendments throughout the Virginia Code to use consistent language when describing mandatory minimum criminal sentences."  Report of the Virginia State Crime Commission to the Governor and General Assembly of Virginia, The Reorganization and Restructuring of Title 18.2, House Document 15, 5 (2004), available at http://leg2.state.va.us/dls/h&sdocs.nsf/By+Year/HD152004/$file/HD15_2004.pdf.  To that end, the Commission suggested that a "definition of mandatory minimum punishment [be] added to the Code and language in various sections throughout the Code [be] conformed" with that definition.  Id.

It is clear, therefore, that the underlying purpose of the amendments set forth in House Bill 1059 was not to make substantive changes to the existing Code sections that required or referred to mandatory penalties, but to make the language used in those sections consistent with the new statutory definition of "mandatory minimum" set forth in Code § 18.2-12.1 and to make other minor editorial corrections where necessary.  The changes in each of the twenty-five other statutes amended in House Bill 1059 are consistent with this view.  Plainly, then, the General Assembly did not intend, in enacting House Bill 1059, to substantively change the existing scope

of Code § 18.2-53.1 to permit suspension under Code § 16.1-272(A)(1)(iii) of the mandatory sentences required by Code § 18.2-53.1. Rather, it intended merely to make the terms of Code § 18.2-53.1 conform with those of Code § 18.2-12.1. Thus, the General Assembly added the phrase "mandatory minimum" to describe the terms of imprisonment to be imposed under Code § 18.2-53.1 and deleted those terms that became surplusage with Code § 18.2-12.1's addition to the Code.

Accordingly, we hold the trial court did not err in ruling it lacked the discretion to suspend Bullock's sentences on his firearm convictions under Code § 16.1-272(A)(1)(iii).

### 2. Consecutive or Concurrent Sentences

Bullock contends that, because Code § 18.2-53.1 does not specifically require that mandatory sentences on multiple use of a firearm convictions run consecutively *with each other*, the trial court erred in concluding it lacked the discretion to allow Bullock to serve his three- and five-year sentences for his use of a firearm convictions concurrently. We disagree.

Code § 18.2-53.1 requires the trial court to sentence a person convicted of using a firearm in the commission of a felony "to a mandatory minimum term of imprisonment of three years for a first conviction, and to a mandatory minimum term of five years for a second or subsequent conviction." As previously mentioned, the purpose of Code § 18.2-53.1 is "to deter violent criminal conduct by imposing a mandatory penalty," not to reform or rehabilitate "'the most dangerous class of criminals.'" Lafleur, 6 Va. App. at 192, 366 S.E.2d at 713 (quoting Ansell, 219 Va. at 763, 250 S.E.2d at 763). Read in conjunction with Code § 18.2-12.1, Code § 18.2-53.1 expressly requires the court to "impose the entire term of confinement" and provides that "[t]he court shall not suspend [the sentence] in full or in part." We construe this language as meaning that the trial court may not set the "mandatory minimum" sentences imposed for multiple convictions under Code § 18.2-53.1 to run concurrently with each other. To construe the statute

- 16 -

as Bullock urges would require us to apply "'an unreasonably restrictive interpretation of the statute' that would subvert the legislative intent expressed therein" and thwart the statute's purpose, which we may not do. Armstrong, 263 Va. at 581, 562 S.E.2d at 144 (quoting Ansell, 219 Va. at 761, 250 S.E.2d at 761); see also Lafleur, 6 Va. App. at 192, 366 S.E.2d at 713.

We hold, therefore, that the trial court did not err in ruling that Bullock's "mandatory minimum" sentences on his firearm convictions "must run consecutive[ly]" under Code § 18.2-53.1.

## III.  CONCLUSION

For these reasons, we affirm the judgment of the trial court and Bullock's sentences.

Affirmed.