COURT OF APPEALS OF VIRGINIA

Present: Judges Elder, Kelsey and McClanahan
Argued at Richmond, Virginia

LINDA FAY GROVES, S/K/A
  LINDA FAYE GROVES
                                                    OPINION BY
v.            Record No. 0229-06-2              JUDGE D. ARTHUR KELSEY
                                                    JUNE 19, 2007
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF POWHATAN COUNTY
                        Thomas V. Warren, Judge

        Joseph M. Teefey, Jr. (David Paul Morgan; Smith & Wells,
        P.C., on brief), for appellant.

        Karri B. Atwood, Assistant Attorney General (Robert F.
        McDonnell, Attorney General, on brief), for appellee.


        The trial court found Linda Faye Groves guilty of larceny by false pretenses, a violation

of Code § 18.2-178.  On appeal, Groves claims the court used the wrong legal standard in

adjudicating her guilt.  Her conviction should be vacated, she argues, and remanded for retrial

under the correct standard.  We disagree and affirm.

                                            I.

        After Groves and her husband separated, she used her husband's separate checking

account to pay various bills.  The account was in his name only and contained funds belonging

solely to him.  Authorizing debits to her husband's checking account number, Groves paid off

debt balances on two of her personal credit cards amounting to $3,065.60.  In the same way, she

used funds from her husband's account to purchase movies ($205.70) and to pay bills for satellite

television service ($272.96) as well as landline and cell phone service ($190.05).

        Groves admitted she did not have her husband's permission to use the funds in his

separate checking account.  She instead asserted a claim-of-right defense, arguing that her

husband left her and the children penniless and would not keep current his court-ordered child-support obligations — which, she said, were $3,000 in arrears. As for the additional $734.31 taken from his account, she argued that her husband paid all household debts prior to their separation and should not be allowed to run away from his responsibilities. She thus believed "she had a right to take that money and use it for the support of the family."

Her husband testified he never gave his wife permission to use his separate checking account for any reason. Even when they were together, he said, his separate checking account was never used to pay his wife's credit card bills or any household expenses. He acknowledged a court order reflecting an arrearage of $2,800 in child-support obligations but said he had been regularly paying household expenses directly.

The day before Groves used her husband's separate account to pay her bills, she swore out a criminal complaint against him for domestic assault. The charge was later dismissed when she advised the presiding judge that she "lied" under oath "about the assault warrant."

At trial, the prosecutor asked Groves on cross-examination if she was "mad" at her husband at the time she used the funds in his checking account. She answered:

> A. Absolutely.
>
> Q. You figured you could just take what you wanted?
>
> A. Absolutely. I was not mad, no, sir.
>
> Q. So you weren't upset at all?
>
> A. I was not mad at Mr. Groves at all.

Sitting as factfinder, the trial judge rejected Linda Groves's claim-of-right defense and found her guilty. The trial judge began his ruling from the bench with the observation that "all of this comes down to not only credibility, but the weight of the evidence." He ended his ruling with "I don't believe your testimony. I find you guilty." In between, the trial judge explained his view of the case this way:

Certain facts I think are important. One, this checking account that we're talking about is Mr. Groves' and his account alone. You had no authority whatsoever, legally, to take anything out of that account. That is singly important insofar as I'm concerned.

Secondly, if we were talking about a couple of hundred dollars for some groceries, the fuel man is outside with a hundred gallons of fuel for your children and the house is dark and cold, that would be something. But we're talking here about a minimum of $3,700, thousands of dollars, just like that, a couple of days after you say that he assaulted you and after you swear out a warrant.

And what it seems to me is that you had the idea – you had no claim of right or no title to that property, or claim or anything; that's his money. . . . You knew that money was his.

\* \* \* \* \* \* \*

Frankly, insofar as the credibility is concerned, Mr. Groves is head and shoulders above you insofar as credibility is concerned. I think this is just no different than if you had gone into his bedroom and taken $3,000 out of his billfold and walked out because you thought that he owed you $3,000.

If he's got all of this money, and he is in arrears, then the judge can put him in jail until he pays this arrearage. Now, you can't just take this thing into your hands and do as you please, make up stories, have people arrested, come in, oh, well, I was lying about that and so forth and so on. It's really a cavalier approach that you had about some things that are extremely serious. I don't believe your testimony.

The trial court found Groves guilty of larceny by false pretenses and sentenced her to a fully suspended 90-day jail term.

## II.

Groves sees in the trial court's remarks a "fundamental misunderstanding" of the law governing her claim-of-right defense, which she describes as "tantamount to improperly instructing the jury." In particular, Groves contends, the trial judge's remarks suggest that he mistakenly thought a claim-of-right defense could never be asserted in cases where, like here, the defendant honestly believed she was merely collecting on a debt. Not contesting the factual

- 3 -

sufficiency of her conviction, Groves asserts the case should be remanded for retrial under the correct principles of law.[1]

We begin our analysis with settled principles of appellate review. "Absent clear evidence to the contrary in the record, the judgment of a trial court comes to us on appeal with a presumption that the law was correctly applied to the facts." Yarborough v. Commonwealth, 217 Va. 971, 978, 234 S.E.2d 286, 291 (1977); Craddock v. Commonwealth, 40 Va. App. 539, 547, 580 S.E.2d 454, 458 (2003). This means the "judge is presumed to know the law and to apply it correctly in each case." Crest v. Commonwealth, 40 Va. App. 165, 172 n.3, 578 S.E.2d 88, 91 n.3 (2003).

Only "clear evidence to the contrary in the record," Campbell v. Commonwealth, 39 Va. App. 180, 186, 571 S.E.2d 906, 909 (2002) (citation omitted), suffices to rebut the presumption. In reviewing the record, therefore, we will not "fix upon isolated statements of the trial judge taken out of the full context in which they were made, and use them as a predicate for holding the law has been misapplied." Bullock v. Commonwealth, 48 Va. App. 359, 368, 631 S.E.2d 334, 339-40 (2006) (citation omitted). And a "trial court's remark is not, in and of itself, the full context simply because it represents the only point at which the court expressly addressed the issue in dispute." Parker v. Commonwealth, 41 Va. App. 643, 656-57, 587 S.E.2d 749, 755 (2003) (citations, internal brackets, and quotation marks omitted).

When announcing his ruling, the trial judge began his analysis focusing on the "credibility" and "weight of the evidence" concerns, and he ended his reasoning on exactly the

---

[1] The Opening Brief of Appellant asserts a general sufficiency challenge to the evidence presented at trial. At oral argument, however, appellant's counsel expressly abandoned that argument: "If this was simply a sufficiency case, I would concede I lose and this case has no merit . . . . I would have to concede there was not an absence of evidence." We thus do not address in any detail the issue of sufficiency.

same point: "I don't believe your testimony." He had ample reason for reaching this conclusion. An admitted perjurer, Groves claimed she confiscated over $3,700 from her husband's checking account as a self-help remedy to recover a $3,000 child support debt. She took the money, the trial judge observed, after swearing out a false assault claim against her husband. She spent most of the money on her personal credit card bills ($3,065.60) without presenting any evidence to substantiate her allegation that the underlying purchases benefited the children. Her claim of right to the remaining $700 (more than enough to satisfy the $200 larceny threshold) rested on even weaker grounds. Those funds, she asserted, compensated for her husband's breach of his moral duty to provide financial support for the family — which, as she interpreted that duty, included payment for movies, satellite television service, and cell phone bills.

The claim-of-right defense requires a predicate showing of "good faith," Butts v. Commonwealth, 145 Va. 800, 811-12, 133 S.E. 764, 767-68 (1926), a *bona fide* belief by the taking party that she has some legal right to the property taken, Strohecker v. Commonwealth, 23 Va. App. 242, 257, 475 S.E.2d 844, 852 (1996). While mistaken, it must still be "sincere," O'Banion v. Commonwealth, 33 Va. App. 47, 56, 531 S.E.2d 599, 603 (2000), and not a "dishonest pretense," 2 Joel Prentiss Bishop, Bishop on Criminal Law § 851, at 648-49 (9th ed. 1923). "Where the evidence is conflicting the question of *bona fides* is for the trier of the facts, in this case the court." Pierce v. Commonwealth, 205 Va. 528, 533, 138 S.E.2d 28, 32 (1964). Whether asserted in good faith or as a "mere pretext," id., a claim-of-right defense relies heavily on factfinding. See Reed v. Commonwealth, 6 Va. App. 65, 70, 366 S.E.2d 274, 277 (1988) (observing that the claim-of-right defense is "usually a question for the trier-of-fact"). When successful, a claim-of-right defense negates the defendant's *animus furandi* — the "intent to steal" *mens rea* element of larceny. Rollin M. Perkins, Criminal Law 265-66, 271 (2d ed. 1969).

When framed by the facts of this case, the trial judge's remarks reveal no misapplication of law imbedded within his reasoning. After rejecting the good-faith factual predicate underlying Groves's claim-of-right defense, the trial judge correctly observed that Groves had "no authority whatsoever, legally, to take anything" out of her husband's separate account. Given the bad faith inhering to her motives, Groves's conduct truly was (as the trial judge put it) "no different" than simply taking money right out of her husband's billfold. By putting it that way, however, the trial judge was not declaring that no wife could ever have a *bona fide* claim of right to money in her husband's billfold. The judge was simply observing that this particular wife's *mala fides* undermined the legitimacy of any claim she might have had to the money.[2]

Along the same lines, we do not understand the trial judge to have asserted that a child support arrearage could never be the subject of a claim-of-right defense. Instead, the judge merely observed that, absent *bona fide* motives sufficient to displace larcenous intent, a support-order payee cannot unilaterally use self-help as a non-judicial tool of enforcement. That unremarkable conclusion is particularly true where, as here, no evidence corroborated her allegation that the confiscated funds actually benefited the children.

## III.

In short, Groves's claim-of-right defense failed not because the trial judge misunderstood the law but because he disbelieved Groves. We thus affirm.

Affirmed.

---

[2] We mean no disparagement of the ancient spousal duty "to provide necessaries," William Blackstone, Commentaries on the Laws of England 189 (Gavit ed. 1892), an implicit obligation of the matrimonial relationship long recognized by the common law of Virginia. See 1 Henry St. George Tucker, Commentaries on the Laws of Virginia 120, 122 (3d ed. 1846). We have little doubt, however, that a rational factfinder could conclude that more than $200 of the funds taken by Groves were spent on purchases outside the scope of any good faith perception on her part of that duty.