KELSEY, J.,
dissenting in part.
Code § 18.2-53.1 establishes a “mandatory minimum” term of imprisonment—not a mandatory maximum. Because the statute sets no upper limit to the potential term of imprisonment, there is no statutory limit. The trial court, therefore, did not err by imposing a ten-year sentence, with seven years suspended, for Hines’s violation of Code § 18.2-53.1.
I. Minimum Means Minimum
In 2004, the General Assembly amended the felony-firearm statute. “As a general rule, a presumption exists that a substantive change in law was intended by an amendment to *583 an existing statute.” Commonwealth v. Bruhn, 264 Va. 597, 602, 570 S.E.2d 866, 869 (2002) (citations omitted). That presumption holds true here. The earlier version of Code § 18.2-53.1 authorized a fixed “term of imprisonment” of three years (for the first offense) or five years (for subsequent offenses) that could not be suspended in whole or in part. The 2004 amendment added “mandatory minimum” to qualify the “term of imprisonment.” 2004 Va. Acts ch. 461 (effective July 1, 2004).
The phrase “mandatory minimum”—when used in scores of other criminal statutes—means the minimum unsuspendable sentence at the lowest point of a statutory sentencing range.[8] This is perfectly sensible. A minimum implies a maximum. Both words logically presuppose a range of options starting with one and ending with the other.[9]
Faithful to the textualist approach to statutory interpretation, Virginia courts presume “the legislature ‘chose, with care,’ the specific words of the statute.” Va. Emp’t Comm’n v. Cmty. Alts., Inc., 57 Va.App. 700, 706, 705 S.E.2d 530, 533 (2011) (citation omitted). Consequently, we cannot “subtract from the words used in the statute,” Posey v. Commonwealth, 123 Va. 551, 553, 96 S.E. 771, 771 (1918), but must give “reasonable effect to every word used,” Riverside Owner, *584 L.L.C. v. City of Richmond, 282 Va. 62, 69, 711 S.E.2d 533, 537 (2011) (citation omitted and emphasis added); Antisdel v. Ashby, 279 Va. 42, 48, 688 S.E.2d 163, 166 (2010). Each word of a statute should be given its “common, ordinary and accepted understanding.” Cmty. Alts., Inc., 57 Va.App. at 706, 705 S.E.2d at 533 (citation omitted).
The common, ordinary, and accepted understanding of the word “minimum” means minimum—not maximum. To me, the analysis begins and ends there. Like Justice Eggleston, I believe it “is our duty to interpret the statute as written and when this is done our responsibility ceases.” Lynchburg v. Suttenfield, 177 Va. 212, 221, 13 S.E.2d 323, 326 (1941); see also Continental Baking Co. v. Charlottesville, 202 Va. 798, 805, 120 S.E.2d 476, 480 (1961). The one canon of construction that precedes all others is that “courts must presume that a legislature says in a statute what it means and means in a statute what it says there.” Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy, 548 U.S. 291, 296, 126 S.Ct. 2455, 2459, 165 L.Ed.2d 526 (2006) (citation omitted). “We can only administer the law as it is written.” Uninsured Empr’s Fund v. Wilson, 46 Va.App. 500, 506, 619 S.E.2d 476, 479 (2005) (quoting Coalter v. Bargamin, 99 Va. 65, 71, 37 S.E. 779, 781 (1901)).
Seeking to rebut the presumption that the 2004 amendment changed the law by replacing a fixed term of imprisonment with a mandatory minimum term of imprisonment, Hines correctly points out that Code § 18.2-53.1 does not state a maximum prison term—either by specifically stating an upper limit or by incorporating a maximum term from the classification of felonies found in Code § 18.2-10. Hines finds this omission anomalous because, read literally, Code § 18.2-53.1 authorizes life imprisonment. This anomaly, Hines reasons, empowers us to blue-pencil the statute, leaving “mandatory” but excising “minimum” from the 2004 amendment. For several reasons, I am unwilling to do so.
To begin with, what Hines views as a legal anomaly is actually settled law. It is not at all “bizarre” for a legislature *585 to enact a mandatory minimum sentence and “decline to state a maximum.” United States v. Turner, 389 F.3d 111, 120 (4th Cir.2004); see also Ex parte Robinson, 474 So.2d 685, 686 (Ala.1985) (“Our research reveals many statutes, both federal and state, which fix a minimum penalty for an offense but which fail to prescribe a maximum penalty.”). When legislatures impose only a “minimum sentence” they leave “it within the power of the court to fix the maximum sentences.” Turner, 389 F.3d at 120 (quoting Binkley v. Hunter, 170 F.2d 848, 849 (10th Cir.1948)). In short, these statutes impose “a mandatory minimum sentence, not a mandatory maximum sentence.” United States v. Lego, 855 F.2d 542, 546 (8th Cir.1988). More than a few courts have found this principle “so self-evident as to not need explanation.” Turner, 389 F.3d at 120.
In such cases, federal and state courts uniformly hold that “in the absence of a statutory maximum penalty, the maximum penalty when a term of not less than a certain number of years is provided, means that the maximum is life imprisonment.” United States v. Sias, 227 F.3d 244, 247 (5th Cir.2000); see also Ex parte Robinson, 474 So.2d at 686. This conclusion merely reflects the “sensible rule of statutory construction whereby the absence of a specified maximum simply means that the maximum is life imprisonment.” Turner, 389 F.3d at 120. The mandatory minimum provision, after all, “is designed to serve as the floor, not the ceiling” for criminal sentences. Sias, 227 F.3d at 247.[10]
A multitude of courts recognize that the minimum-means-minimum principle applies to felony-firearm statutes no less than any other criminal statute. Id.[11] The majority cites no *586 cases suggesting otherwise, and I am unaware of any. Nor am I persuaded by the majority’s cursory dismissal of this unbroken line of federal and state cases on the ipse dixit that they have little in common with our case. Ante at 579-80, 721 S.E.2d at 798. Because the legal issue is the same, they have everything in common. Neither Hines nor the majority, therefore, can shoulder the burden of rebutting the presumption that the 2004 amendment effected a “substantive change in law,” Bruhn, 264 Va. at 602, 570 S.E.2d at 869 (citations omitted), by replacing a fixed term of imprisonment to a mandatory minimum term of imprisonment.
II. The Bullock Digression
The one case the majority does rely upon, Bullock v. Commonwealth, 48 Va.App. 359, 631 S.E.2d 334 (2006), is neither dispositive nor particularly relevant. Bullock held the 2004 amendment to Code § 18.2-53.1 did not supersede our prior caselaw interpreting the statute to forbid judicial suspension of mandatory sentences. The majority, however, quotes Bullock for a far broader proposition: “As we have previously noted, ‘the General Assembly did not intend, in enacting [the *587 2004 amendment], to substantively change the existing scope of Code § 18.2-53.1.’ Bullock, 48 Va.App. at 377, 631 S.E.2d at 343.” Ante at 576, 721 S.E.2d at 796.
The majority, however, quotes only half of the pertinent sentence from Bullock. The omitted half includes an important qualification. The full sentence from Bullock reads: “Plainly, then, the General Assembly did not intend, in enacting [the 2004 amendment], to substantively change the existing scope of Code § 18.2-53.1 to permit suspension under Code § 16.1-272(A)(1)(iii) of the mandatory sentences required by Code § 18.2-53.1.” Bullock, 48 Va.App. at 377, 631 S.E.2d at 343 (emphasis added). The truncated quote attributed by the majority to Bullock has been taken out of context. And, taken in context, Bullock adds nothing to the issue before us in this case.
In a footnote, ante at 577 n. 6, 721 S.E.2d at 796-97 n. 6, the majority seeks to rehabilitate its incomplete quote from Bullock by attempting to connect the holding in that case— concluding that the 2004 amendments to Code § 18.2-53.1 did not change existing law forbidding suspension of a mandatory sentence—to the broader revisions proposed by the Virginia State Crime Commission prior to the 2004 amendments. The connection in Bullock made sense because the Commission had repeatedly emphasized that mandatory sentences could not be suspended. Here, the connection makes no sense because the issue is entirely different. The question in our case is not whether a mandatory sentence can be suspended, but whether an unsuspendable mandatory minimum sentence is truly a minimum sentence.
Nothing in the Commission’s recommendations suggested a mandatory minimum sentence, standing alone, should be interpreted as a maximum sentence. See Virginia State Crime Commission Report, House Doc. No. 15, at 5 (2004), available at http://leg2.state.va.us/dls/ h & sdocs. nsf/By+Year/HD152004/$file/HD15—2004.pdf. Though the Commission’s report recommended dozens of statutory changes, see id., Part II at 1-7, Part V at 32-41, none *588 mentioned Code § 18.2-53.1. If anything, the legislative history shows just the opposite of what the majority assumes. During the 2004 session, the General Assembly defeated two bills seeking to amend Code § 18.2-53.1 while leaving intact the prior language mandating fixed terms of imprisonment. See House Bill No. 1053H1 (substitute offered Feb. 13, 2004); House Bill No. 377 (offered Jan. 14, 2004). Taking a different approach, the General Assembly replaced the fixed terms of the pre-2004 version of Code § 18.2-53.1 with new “mandatory minimum” terms of imprisonment. See 2004 Va. Acts ch. 461 (effective July 1, 2004).
III. The Larger Statutory Context
Equally unconvincing is the majority’s reliance on Code § 18.2-14, which merely states that unclassified felonies should be punished “according to the punishment prescribed in the section or sections thus defining the offense.” I do not understand what this adds to the analysis. Code § 18.2-53.1 enacts an unclassified felony. So, under Code § 18.2-14, we look solely to Code § 18.2-53.1 (rather than Code § 18.2-10’s felony punishment classifications) to determine the sentence to be imposed. But this tells us nothing about what Code § 18.2-53.1 means by imposing a “mandatory minimum term of imprisonment.” Code § 18.2-14 begs, but does not answer, the question before us.
Along the same lines, I see no interpretative relevance to Code § 18.2-12.1, which confirms existing law that a “mandatory minimum” sentence cannot be suspended in full or in part. This provision merely states what we already know: The mandatory minimum terms of imprisonment in Code § 18.2-53.1 cannot be suspended. See Bullock, 48 Va.App. at 377, 631 S.E.2d at 343. A sentence above the minimum, of course, can be, and often is, suspended. If Code § 18.2-12.1 really meant for a “mandatory minimum” term to be a “mandatory maximum ” term, it would be in conflict with a myriad of statutes imposing an unsuspendable “mandatory minimum” term of imprisonment while simultaneously autho *589 rizing a higher, entirely suspendable, maximum term. See supra at 583 n. 8, 721 S.E.2d at 799-800 n. 8.
IV. Plain Meaning & Statutory Absurdity
I also question Hines’s underlying assumption, apparently shared by the majority, that the sheer possibility of a life sentence for violating Code § 18.2-53.1 would be a manifest absurdity. Ante at 579-80, 721 S.E.2d at 798. Working from the statutory text, Virginia courts “strive to give that language a ‘literal construction’ unless doing so ‘would involve a manifest absurdity.’ ” Johnson v. Commonwealth, 58 Va.App. 625, 641, 712 S.E.2d 751, 759 (2011) (citation omitted). The absurdity exception, however, applies only when a literal reading of the statute produces systemic anomalies in a realistic range of likely applications, not in fanciful hypothetical situations.
A literal interpretation of Code § 18.2-53.1—one that interprets “minimum” to mean minimum, not maximum—cannot be dismissed as a manifest absurdity. No court has ever suggested as much. Nor can we say a life sentence would never be appropriate under this statute. The “mandatory minimum” term of Code § 18.2-53.1 applies to various felons, including murderers and rapists who use firearms to kill, abuse, or torture their victims. I see no manifest absurdity in imposing life imprisonment upon a recidivist murderer or rapist who uses a firearm to accomplish his crime.[12] It does not make it absurd to do so simply because the murderer or rapist also deserves equal punishment on the underlying predicate felony.
As for the conjectural possibility that a life sentence could be imposed upon an undeserving criminal, I am content to rely on the good judgment of our trial judges to avoid such immoderate results. That this trust is well-placed is evidenced by the fact that life sentences are “rarely, if ever, *590 imposed” in felony-firearm cases. United States v. Stewart, 628 F.3d 246, 258-59 (6th Cir.2010) (citation omitted).
V. The Attorney General’s Concession
Unlike the majority, I am unimpressed by what the majority calls the Commonwealth’s “concession that the statute prescribes only a three-year mandatory sentence.” Ante at 582, 721 S.E.2d at 799. I think it fair to call it a concession of sorts, but it is an ambivalent and puzzling one. The Attorney General’s brief quotes from one of our unpublished opinions, Neria v. Commonwealth, No. 3088-07-4, 2009 WL 743316, 2009 Va.App. Lexis 136 (Mar. 24, 2009) (Elder, J.), which held the phrase “mandatory minimum” in another statute, Code § 18.2-270(C), actually meant mandatory minimum:
The statute sets a “mandatory minimum fine of $1,000.” The plain, obvious, and rational meaning of “mandatory minimum fine of $1,000” is that the trial court or jury has the discretion to impose a pecuniary punishment greater than $1,000, and nothing in the statute supports a different conclusion. Thus, setting the fine at $2,500 was clearly within the discretion of the jury.
Neria, 2009 WL 743316, at *3, 2009 Va.App. Lexis 136, at *10. Adopting our reasoning, the Virginia Supreme Court affirmed in an unpublished order. Neria v. Commonwealth, No. 090813 (Va. Feb. 19, 2010). As a “decision on the merits,” the Neria affirmance order has precedential value because the analytical “grounds” for the decision are “discernible from the four corners of the Court’s order.” Sheets v. Castle, 263 Va. 407, 411-12, 559 S.E.2d 616, 619 (2002).
Relying on Neria, the Attorney General correctly argues: “Hines, in essence, is asking this Court to rewrite the sentencing portion of § 18.2-53.1 by effectively ignoring the term ‘minimum’ in the present statute.” Appellee’s Br. at 13 (emphasis added). “Had the General Assembly intended the ‘mandatory minimum’ sentence of three years to be both the minimum and maximum term of imprisonment for an initial violation of Code § 18.2-53.1, it simply would have left the *591 three year sentence to be ‘mandator' instead of amending the statute in 2004 to add the term ‘minimum.’ ” Id.
The Attorney General’s brief then takes a surprising turn. After opining on Neria and the plain meaning of the phrase “mandatory minimum,” the Attorney General states he feels “constrained” to point out that under Code § 18.2-14, “while perhaps not what the General Assembly intended,” it “appears” that the three and five-year mandatory minimums in Code § 18.2-53.1 are actually mandatory maximums. Appellee’s Br. at 14-15 (emphasis added). As I noted earlier, however, Code § 18.2-14 says no such thing. Code § 18.2-14 merely directs us to the text of Code § 18.2-53.1 (rather than Code § 18.2-10’s felony punishment classifications) to determine the sentence to be imposed. Once we limit ourselves to Code § 18.2-53.1, the question still remains whether “mandatory minimum” can be judicially construed to mean mandatory maximum.
Because I do not share the Attorney General’s angst over Code § 18.2-14, but agree fully with his plain reading of Code § 18.2-53.1,1 respect but cannot accept his concession. Virginia courts, of course, “have no obligation to accept concessions of error” and can never be bound by a concession on a “pure question of law.” Copeland v. Commonwealth, 52 Va.App. 529, 531, 664 S.E.2d 528, 529 (2008) (citing United States v. Hairston, 522 F.3d 336, 340 (4th Cir.2008) (recognizing “the government’s concession of error is not binding on this court”), and Logan v. Commonwealth, 47 Va.App. 168, 172, 622 S.E.2d 771, 773 (2005) (en banc)). “Pure statutory construction, a matter within the ‘core competency of the judiciary,’ requires de novo review.” Citland, Ltd. v. Commonwealth ex rel. Kilgore, 45 Va.App. 268, 275, 610 S.E.2d 321, 324 (2005) (citation omitted). Unlike the majority, I see nothing upon a de novo review of the law that “compels this Court,” ante at 582, 721 S.E.2d at 799, to accept the Attorney General’s halfhearted concession.
VI. The “Fiscal Impact” op the 2004 Amendment
Lacking any textual or caselaw support for its interpretation, the majority turns to the argument that the “mandatory *592 minimum” term in the 2004 amendment could not mean a minimum sentence because that would cost money and the legislature allegedly failed to allocate funds to pay for it. See ante at 578-80, 721 S.E.2d at 797-98 (citing Code § 30-19.1:4). This argument, it seems to me, is the weakest of all. Probably for this reason, Hines did not make it orally or on brief. Nor did the Attorney General mention it. I think the reason why is that no Virginia court has ever failed to enforce the plain meaning of a statute because, it was thought, the legislature failed to consider its economic consequences. This appears to be the first time such an argument has been factored into the traditional rules of statutory construction.
What is more, the assumption underlying this argument rises no higher than a speculative, guess. None of us can explain the absence of a specific appropriation for the 2004 amendment to Code § 18.2-53.1. It could be the Virginia Criminal Sentencing Commission simply misread the proposed amendment and, as a consequence, neglected to prepare a fiscal impact statement under Code § 30-19.1:4(A). Perhaps those charged with scoring the fiscal impact relied upon the State Crime Commission Report, not realizing the recommendations in the report addressed only nineteen of the mandatory minimum statutes needing amendment and conspicuously omitted any mention of Code § 18.2-53.1. See VCC Report, supra, at 37-38. Maybe this specific funding issue got lost in the larger decision by the General Assembly in 2004 to build two new state prisons at a cost of over $140 million. See 2004 Va. Acts Spec. Sess. I, ch. 4, at 493. A year later, in 2005, the General Assembly authorized yet another new prison, see 2005 Va. Acts, ch. 951, at 2281-82, which, after being built, was promptly mothballed without ever being used.
I do not know what to make of these budgeting and appropriation decisions. But I do know what not to make of them. No matter the plausible explanations, none persuade me to interpret “minimum” in Code § 18.2-53.1 to mean anything other than minimum.
*593 VII. Conclusion
In sum, the plain wording of Code § 18.2-53.1 establishes a mandatory minimum term of imprisonment—not a mandatory maximum. Because the statute sets no upper limit to the potential term of imprisonment, there is no statutory limit. In this case, therefore, the trial court did not err by imposing a ten-year sentence, with seven years suspended, for Hines’s violation of Code § 18.2-53.1.[13]

. See, e.g., Code §§ 3.2-4212; 4.1-305; 15.2-1812.2; 16.1-253.2; 18.2-36.1; 18.2-36.2; 18.2-46.3:3; 18.2-51.1; 18.2-57; 18.2-60.4; 18.2-61; 18.2- 67.1; 18.2-67.2; 18.2-121; 18.2-154; 18.2-186.4; 18.2-248; 18.2- 248.01; 18.2-248.03; 18.2-248.1; 18.2-248.5; 18.2-255; 18.2-255.2; 18.2-266.1; 18.2-270; 18.2-308.1; 18.2-308.2:2; 18.2-374.1; 18.2- 374.1:1; 18.2-374.3; 46.2-301; 46.2-341.28; 46.2-357; 46.2-391; 46.2-865.1; 53.1-203.

. In every instance where the legislature has chosen to do otherwise— by capping the punishment at the mandatory minimum sentence—it has done so expressly. See Code §§ 18.2-308.2(A) (possessing firearm after conviction of violent felony punished as Class 6 felony (up to five years imprisonment), with a five-year mandatory minimum); 18.2-308.4(C) (possessing firearm while possessing certain drugs with the intent to distribute punished as Class 6 felony (maximum five years imprisonment), with a five-year mandatory minimum); 46.2-1110 (misdemeanor conviction and fine of $1,000 and $2,500 for subsequent offenses, imposed as a mandatory minimum).

. See United States v. Wolak, 923 F.2d 1193, 1199 (6th Cir.1991); United States v. Jackson, 835 F.2d 1195, 1197 (7th Cir.1987); see also Ex parte Robinson, 474 So.2d 685, 686 (Ala.1985); State v. Stephens, 507 S.W.2d 18, 22 (Mo.1974); State v. Turnbow, 81 N.M. 254, 466 P.2d 100, 101 (1970); State v. Sisneros, 81 N.M. 194, 464 P.2d 924, 925 (Ct.App.1970).

. United States v. Ortiz-Garcia, 665 F.3d 279, 285 (1st Cir.2011); United States v. Rozier, 598 F.3d 768, 772 (11th Cir.2010); United States *586 v. Shabazz, 564 F.3d 280, 289 (3d Cir.2009); United States v. Johnson, 507 F.3d 793, 798 (2d Cir.2007); United States v. Gamboa, 439 F.3d 796, 811 (8th Cir.2006); United States v. Dare, 425 F.3d 634, 642 (9th Cir.2005); United States v. Weems, 322 F.3d 18, 26 (1st Cir.2003); United States v. Avery, 295 F.3d 1158, 1170 (10th Cir.2002); United States v. Cristobal, 293 F.3d 134, 147 (4th Cir.2002); United States v. Harrison, 272 F.3d 220, 225-26 (4th Cir.2001); United States v. Pounds, 230 F.3d 1317, 1319 (11th Cir.2000); United States v. Brame, 997 F.2d 1426, 1428 (11th Cir.1993); United States v. Fields, 923 F.2d 358, 362 (5th Cir.1991), overruled on other grounds by United States v. Lambert, 984 F.2d 658, 662 (5th Cir.1993) (en banc); United States v. Tisdale, 921 F.2d 1095, 1100 (10th Cir.1990); United States v. Alvarez, 914 F.2d 915, 919 (7th Cir.1990), superseded on other grounds by Stinson v. United States, 508 U.S. 36, 47, 113 S.Ct. 1913, 1920, 123 L.Ed.2d 598 (1993); United States v. Williams, 892 F.2d 296, 304 (3d Cir.1989), superseded on other grounds by Stinson, 508 U.S. at 47, 113 S.Ct. at 1920; United States v. Blannon, 836 F.2d 843, 845 (4th Cir.1988); United States v. Jackson, 835 F.2d 1195, 1197 (7th Cir.1987); Walberg v. United States, 763 F.2d 143, 148-49 (2d Cir.1985); State v. Norton, 949 S.W.2d 672, 678 (Mo.Ct.App.1997); State v. Fulks, 114 W.Va. 785, 173 S.E. 888, 889 (1933). Accord supra n. 10.

. Consider, too, the counter-absurdity of capping the sentence of a rapist or murderer using a firearm at three years of imprisonment (under the majority’s interpretation of Code § 18.2-53.1) while inconsistently capping the sentence for possessing a firearm and drugs, even without using it, at five years (Code § 18.2-308.4).

. I concur with the majority's holding that the trial court did not err in imposing an active sentence of thirteen years for Hines's robbery convictions. See ante at 575, 582-84, 721 S.E.2d at 793, 799-800.