COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Kelsey and Alston
Argued at Richmond, Virginia


TERRA NYREE HINES
                                                              OPINION BY
v.        Record No. 0228-11-2                     JUDGE LARRY G. ELDER
                                                           FEBRUARY 14, 2012
COMMONWEALTH OF VIRGINIA


                   FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                                  Harold W. Burgess, Jr., Judge

              Catherine S. Rusz (Johnson, Gaborik, Fisher-Rizk, and Rusz, PLC,
              on brief), for appellant.

              Robert H. Anderson, III, Senior Assistant Attorney General
              (Kenneth T. Cuccinelli, II, Attorney General; Richard B. Smith,
              Special Assistant Attorney General, on brief), for appellee.


        Terra Nyree Hines (appellant) pleaded guilty to two counts of robbery in violation of

Code § 18.2-58 and one count of use of a firearm in the commission of one of the robberies in

violation of Code § 18.2-53.1.  She argues on appeal that the trial court erred in imposing a

ten-year sentence for the use of a firearm conviction because Code § 18.2-53.1 sets the

maximum sentence at three years.  Appellant further contends the trial court erred in imposing a

thirteen-year active sentence for all three crimes despite the "substantial mitigating evidence"

presented at the sentencing hearing.  We hold, and the Commonwealth concedes, <u>see</u>

Commonwealth's Br. at 18, that the maximum sentence allowed under Code § 18.2-53.1 is the

mandatory term of either three years or five years,[1] and the trial court therefore abused its

discretion in imposing the ten-year sentence.  We further hold that the trial court did not err in

_____

        [1] Code § 18.2-53.1 provides a "mandatory minimum" of three years for a first conviction
and "a mandatory minimum term of five years for a second or subsequent conviction."

imposing five years active incarceration for each of the robbery charges. We therefore affirm in part, reverse in part, and remand to the trial court with instructions for entry of a sentencing order consistent with this opinion.

I.

BACKGROUND

On August 2, 2010, appellant pleaded guilty to two counts of robbery and one count of use of a firearm in the commission of a robbery. The trial court accepted appellant's pleas and continued the matter for sentencing. At the sentencing hearing on December 21, 2010, appellant asked for leniency in sentencing in light of her respectable work history, full cooperation with the authorities upon her arrest, and efforts to improve her life since her incarceration. In response, the Commonwealth stated it did not have an objection to the trial court sentencing appellant below the guidelines.[2] The trial court considered appellant's exhibits, "letters from [her] co-workers," the testimony of her former employer, and appellant's lack of a significant prior criminal history as mitigating factors in favor of deviating downward from the sentencing guidelines. However, the trial court noted that appellant committed a string of robberies and threatened the victims with a weapon. The trial court accordingly sentenced appellant to twenty years on each of the robbery convictions and ten years on the use of a firearm conviction. The trial court further suspended fifteen years on each of the robbery convictions and seven years on the firearm conviction for a total active sentence of thirteen years.[3]

---

[2] The parties and the trial court noted that the recommended sentencing range was high because appellant had a contemporaneous conviction in Henrico County for robbery. Appellant was convicted in that case on August 18, 2010. The trial court noted that had appellant been sentenced in the Chesterfield County circuit court, the sentence range would have been lower.

[3] In the sentencing order, the trial court noted that "3 years is the minimum mandatory sentence" for the use of a firearm conviction.

Appellant did not object to the trial court's reliance on the evidence presented at the sentencing hearing or to the ten-year sentence imposed for the use of a firearm conviction. This appeal follows.

## II.

## ANALYSIS

### A.

### MANDATORY MINIMUM SENTENCE UNDER CODE § 18.2-53.1

Appellant acknowledges that she did not contemporaneously object to the trial court's imposition of her ten-year incarceration for the use of a firearm conviction. Appellant invokes the "ends of justice" exception to Rule 5A:18 to request our consideration of her argument. Under Rule 5A:18, "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling." However, this Court may consider an alleged error to which no timely and specific objection was made when "good cause [is] shown or to enable the Court of Appeals to attain the ends of justice." Id. "Determining whether the ends of justice exception should be applied requires the appellate court first to determine whether there was error as [appellant] contends and then 'whether the failure to apply the ends of justice provision would result in a grave injustice.'" Howard v. Commonwealth, 281 Va. 455, 462, 706 S.E.2d 885, 888-89 (2011) (quoting Gheorghiu v. Commonwealth, 280 Va. 678, 689, 701 S.E.2d 407, 413-14 (2010)). In other words, the ends of justice analysis is a two-step process: determining whether the alleged error occurred, and, if so, whether justice requires application of the ends of justice provision. "The record 'must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage might have occurred.'" Akers v. Commonwealth, 31 Va. App. 521, 527 n.2, 525 S.E.2d 13, 16 n.2 (2000) (quoting Redman v. Commonwealth, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997)).

- 3 -

Appellant contends the trial court erred in sentencing her to ten years incarceration for the use of a firearm conviction because the maximum allowable incarceration under Code § 18.2-53.1 in her case is three years. Specifically, appellant argues the "mandatory minimum" language contained within Code § 18.2-53.1 also operates as a maximum because Code § 18.2-53.1 neither specifies the class of the offense nor contains a maximum punishment. Appellant concludes that the only option for the trial court was to sentence appellant to three years' incarceration, none of which could be suspended.

The Commonwealth agrees with appellant's interpretation of Code § 18.2-53.1 and concedes "that the *only* sentence available for a first conviction under Code § 18.2-53.1 is three years in prison, which cannot be suspended or run concurrently with any other sentence." Commonwealth's Br. at 15 (emphasis in original). However, the Commonwealth points out that in 2004, the General Assembly amended Code § 18.2-53.1 to include the phrase "mandatory minimum." The Commonwealth posits that accepting appellant's argument would effectively rewrite Code § 18.2-53.1 and render the 2004 amendment superfluous.

Because appellant asks this Court to interpret the language of Code § 18.2-53.1 proscribing punishment, we rely on the familiar principles of statutory construction, and review this issue *de novo*. See Harris v. Commonwealth, 274 Va. 409, 413, 650 S.E.2d 89, 91 (2007). "The primary objective of statutory construction is to ascertain and give effect to legislative intent." Commonwealth v. Zamani, 256 Va. 391, 395, 507 S.E.2d 608, 609 (1998). Thus, we construe a statute "with reference to its subject matter, the object sought to be attained, and the legislative purpose in enacting it; the provisions should receive a construction that will render it harmonious with that purpose rather than one which will defeat it." Esteban v. Commonwealth, 266 Va. 605, 609, 587 S.E.2d 523, 526 (2003).

> When the language of a statute is unambiguous, we are bound by
> the plain meaning of that language. Furthermore, we must give

effect to the legislature's intention as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity. If a statute is subject to more than one interpretation, we must apply the interpretation that will carry out the legislative intent behind the statute. Id. (citations omitted). Additionally, "[t]he plain, obvious, and rational meaning of a statute is to be preferred over any curious, narrow, or strained construction." Meeks v. Commonwealth, 274 Va. 798, 802, 651 S.E.2d 637, 639 (2007) (citation and internal quotation marks omitted).

Kozmina v. Commonwealth, 281 Va. 347, 349-50, 706 S.E.2d 860, 862 (2011).

"It is a cardinal principle of law that penal statutes are to be construed strictly against the [Commonwealth]" and "cannot be extended by implication, or be made to include cases which are not within the letter and spirit of the statute." Wade v. Commonwealth, 202 Va. 117, 122, 116 S.E.2d 99, 103 (1960). However, "we will not apply 'an unreasonably restrictive interpretation of the statute' that would subvert the legislative intent expressed therein." Armstrong v. Commonwealth, 263 Va. 573, 581, 562 S.E.2d 139, 144 (2002) (quoting Ansell v. Commonwealth, 219 Va. 759, 761, 250 S.E.2d 760, 761 (1979)).

Upon conviction under Code § 18.2-53.1, a defendant "shall be sentenced to a mandatory minimum term of imprisonment of three years for a first conviction."[4] Code § 18.2-12.1 defines the phrase "mandatory minimum" as the "impos[ition of] the entire term of confinement, the full amount of the fine and the complete requirement of community service prescribed by law," such that the trial "court shall not suspend in full or in part any punishment described as mandatory minimum punishment." However, Code § 18.2-53.1 contains no specification as to the class of

---

[4] Code § 18.2-53.1 also provides that a defendant shall be sentenced "to a mandatory minimum term of five years for a second or subsequent conviction under the provisions of this section." Because it is undisputed that appellant has only one conviction of use of a firearm in the commission of a felony, we refer only to the applicable mandatory minimum term of three years imprisonment.

the offense or a range within which the trial court may set a maximum term of imprisonment.[5]

In such instances, Code § 18.2-14 provides that "[o]ffenses . . . for which punishment is prescribed without specification as to the class of the offense, shall be punished according to the punishment prescribed in the section or sections thus defining the offense." Because Code § 18.2-53.1 prescribes only a term of imprisonment of three years, application of Code § 18.2-14 provides that the mandatory minimum is the maximum as well. As the Commonwealth points out, this construction is problematic because the phrase "mandatory *minimum*" suggests that the trial court has some discretion in imposing a sentence greater than the mandatory term of incarceration. A minimum sets a sentencing floor, not a ceiling. See Carroll v. Johnson, 278 Va. 683, 693, 685 S.E.2d 647, 652 (2009) (requiring the courts to "consider the ordinary and plain meaning of statutory terms"). Thus, on one hand, it appears from the face of the statute that no statutory maximum exists and the trial court has the discretion to sentence a defendant to up to life imprisonment for a conviction of possession of a firearm in the commission of a felony. On the other hand, application of Code § 18.2-14 would seem to indicate that the trial court may impose only a three or five-year term of incarceration. To resolve this ambiguity in the statutory language, we turn to the history of Code § 18.2-53.1 to determine the General Assembly's intent.

---

[5] Ordinarily, this Court will harmonize the mandatory minimum sentence contained within a statute with the range of punishment authorized by its class specification under Code § 18.2-10. For example, Code § 18.2-308.2(A) criminalizes the "knowing[] and intentional[]" possession of a firearm by "any person who has been convicted of a felony." That code section prescribes a mandatory minimum sentence of five years if the defendant had been previously convicted of a violent felony and a mandatory minimum sentence of two years for all other felonies. Id. "Since a violation of Code § 18.2-308.2(A) is a Class 6 felony punishable under Code § 18.2-10 by a term of imprisonment between one and five years, the mandatory minimum sentence for a defendant convicted of possession of a firearm after a previous violent felony conviction equals the statutory maximum sentence." Rawls v. Commonwealth, 272 Va. 334, 347-48, 634 S.E.2d 697, 703 (2006). Conversely, "a defendant who was previously convicted of any felony other than one designated as a violent felony under Code § 17.1-805 is subject to a sentence of a term of imprisonment of two years (the mandatory minimum) to five years (the maximum)." Id. at 348, 634 S.E.2d at 704; see, e.g., Mouberry v. Commonwealth, 39 Va. App. 576, 584, 575 S.E.2d 567, 570-71 (2003).

The General Assembly enacted Code § 18.2-12.1 in 2004 as part of an extensive overhaul of those statutes prescribing mandatory punishments. See 2004 Va. Acts, c. 461, at 674. In the same bill, the General Assembly amended twenty-five other statutes "to make the language used in those sections consistent with the new statutory definition of 'mandatory minimum' set forth in Code § 18.2-12.1 and to make other minor editorial corrections where necessary." Bullock v. Commonwealth, 48 Va. App. 359, 376-77, 631 S.E.2d 334, 343 (2006). Each of the other statutes affected by the 2004 amendment that proscribe criminal conduct contains either a class specification or a range of punishment. See Code §§ 4.1-305; 18.2-36.1; 18.2-51.1; 18.2-57; 18.2-121; 18.2-154; 18.2-248; 18.2-248.01; 18.2-248.1; 18.2-248.5; 18.2-255; 18.2-255.2; 18.2-270; 18.2-308.1; 18.2-308.2; 18.2-308.2:2; 18.2-308.4; 19.2-120; 30-19.1:4; 46.2-301; 46.2-341.28; 46.2-357; 46.2-391; 53.1-203. In fact, the sentencing ranges and class specifications of these statutes existed prior to the 2004 amendment. As we previously mentioned above, Code § 18.2-53.1 is unique in that it contains neither a sentencing range nor a class specification.

We do not share the Commonwealth's concern that interpreting Code § 18.2-53.1 to authorize only a three or five-year term of incarceration would render the inclusion of the term "mandatory *minimum*" superfluous. As we have previously noted, "the General Assembly did not intend, in enacting House Bill 1059, to substantively change the existing scope of Code § 18.2-53.1."[6] Bullock, 48 Va. App. at 377, 631 S.E.2d at 343. Prior to 2004, Code § 18.2-53.1

---

[6] Contrary to the dissent's view that our "truncated" interpretation of Bullock takes its holding out of context, that decision provides useful guidance in interpreting the underlying purpose of the 2004 amendment. In Bullock, the defendant argued that when the 2004 amendment omitted the "Notwithstanding any other provision of law" clause, the General Assembly implicitly authorized "the courts to apply the sentencing provisions of Code § 16.1-272(A)(1)(iii) to suspend any part, if not all, of a juvenile offender's mandatory minimum sentence for a use of a firearm conviction." Bullock, 48 Va. App. at 373, 631 S.E.2d at 341. We rejected that view because "the legislative background of the 2004 amendment of Code § 18.2-53.1 clearly demonstrates that the amendment to Code § 18.2-53.1 was not a 'change[] of

mandated that "any person found guilty thereof shall be sentenced to a term of imprisonment of three years for a first conviction" and that "the sentence prescribed for a violation of the provisions of this section shall not be suspended in whole or in part." 1993 Va. Acts c. 835; see In re Commonwealth, 229 Va. 159, 163, 326 S.E.2d 695, 698 (1985) (noting that "by prescribing a mandatory sentence, the General Assembly has divested trial judges of all discretion respecting punishment"). Implicitly granting a trial court the power to impose a life sentence under a statute that previously mandated only a three or five-year sentence would constitute a significant change. Had the General Assembly wished to increase the range of punishment and grant the trial court discretion in sentencing a defendant for a conviction of use of a firearm in the commission of a felony, it could have done so.

Indeed, Code § 30-19.1:4, which was also amended by the 2004 amendment, requires the Commission to "prepare a fiscal impact statement reflecting the operating costs attributable to and necessary appropriations for any bill which would result in a net increase in period of imprisonment in state adult correctional facilities." Code § 30-19.1:4(A). "The requirement for a fiscal impact statement includes . . . those bills which . . . impose minimum or mandatory minimum terms of imprisonment or commitment." Code § 30-19.1:4(C). In other words, any

---

substance, which add[ed] rights to, or withdr[e]w existing rights from, an original act,' but rather a 'change[] of form, which merely interpreted' the existing law." Id. at 375, 631 S.E.2d at 342 (quoting Boyd v. Commonwealth, 216 Va. 16, 20, 215 S.E.2d 915, 918 (1975) (per curiam)). We stated repeatedly throughout the opinion "that the underlying purpose of the amendments set forth in House Bill 1059 was not to make substantive changes to the existing Code sections that required or referred to mandatory penalties." Id. at 376, 631 S.E.2d at 343. Indeed, the 2004 amendment was "enacted in response to recommendations by the Virginia State Crime Commission," which "recommended amendments throughout the Virginia Code to use consistent language when describing mandatory minimum criminal sentences." Id. at 376, 631 S.E.2d at 342-43 (citation omitted). The exhaustive analysis in Bullock makes clear that substantive changes—such as allowing for the possibility of life imprisonment where none previously existed, as the dissent suggests—is not the purpose of the 2004 amendment. Much like the defendant in Bullock, the dissent is advocating the use of the 2004 amendment to significantly rewrite Code § 18.2-53.1, which is precisely what Bullock cautions against.

introduced bill that would result in additional incarceration *must* include a second enactment clause on the face of the bill setting forth the amount calculated by the Commission. Obviously, an amendment that was intended to increase the term of incarceration from a fixed mandatory term of three years to a potential life imprisonment would impact the operating costs of housing inmates and would require a fiscal impact statement in the bill. See, e.g., S. 1082, 2011 Sess. (Va. 2011); H.D. 889, 1994 Sess. (Va. 1994) (amending Code §§ 18.2-57 and -121). However, House Bill 1059, as introduced, did not include such a fiscal impact statement, nor were additional funds appropriated to pay for the additional costs. See Code § 30-19.1:4(H). Accordingly, despite the ambiguous term "mandatory minimum," we conclude that the General Assembly's insertion of that phrase and its decision not to specify the class of the felony amounts to a mere legislative oversight and not an intention to substantively change the range of punishment for conviction under Code § 18.2-53.1. Accord Schwartz v. Commonwealth, 267 Va. 751, 754-55, 594 S.E.2d 925, 927 (2004) (recognizing that a "literal construction of [Code § 18.2-81] would improperly yield an absurd result" because it "'could be construed as permitting a separate arson prosecution for every item destroyed in a home or car'" (quoting Schwartz v. Commonwealth, 41 Va. App. 61, 77, 581 S.E.2d 891, 899 (2003) (Fitzpatrick, C.J., concurring)).

The dissent asserts the majority is inventing a "manifest absurdity" where none exists. Citing extensively to federal case law and law from other states, the dissent posits that "[i]t is not at all 'bizarre' for a legislature to enact a mandatory minimum sentence and 'decline to state a maximum.'" Infra at 16 (quoting United States v. Turner, 389 F.3d 111, 120 (4th Cir. 2004)). However, "'interpret[ing] [such a] statute as intending to authorize a maximum of life imprisonment'" is only "self-evident," Turner, 389 F.3d at 120 (quoting Walberg v. United States, 763 F.2d 143, 148 (2d Cir. 1985) (first alteration added)), because "[t]here are many laws

. . . upon the statute books of the Federal Government, as well as of the various states, fixing a minimum sentence and leaving it within the power of the court to fix the maximum sentences," Binkley v. Hunter, 170 F.2d 848, 849 (10th Cir. 1948). By contrast, every other penal statute enacted by the General Assembly contains a maximum punishment range within the statute itself or by virtue of its class specification, thereby leaving no discretion to impose a life sentence unless specifically authorized. Because Virginia does not follow the established practice of those jurisdictions, the dissent's reliance on federal and state jurisprudence provides little persuasive value in the instant matter. See Moore v. Warren, 250 Va. 421, 423-24, 463 S.E.2d 459, 460 (1995) (rejecting the petitioner's reliance on case law from other jurisdictions to interpret charitable immunity "[b]ecause the status of charitable immunity and the theories upon which it is based vary greatly from jurisdiction to jurisdiction").

Consistent with the dissent, we recognize and respect the good judgment of our trial judges to avoid immoderate results in cases. Here, however, ambiguity or uncertainty exists in the language of the statute, lending itself to potentially inconsistent applications. Accordingly, in consideration of the analysis advanced by the Attorney General and the historical framework of this and related criminal provisions, we believe that the majority interpretation accomplishes the objectives of the legislative scheme. Had the General Assembly only amended Code § 18.2-53.1 to include the phrase "mandatory minimum," we would be compelled to conclude the General Assembly intended to substantially change the range of punishment available under the statute. Instead, the legislature amended a broad range of statutes that included mandatory sentences. As the dissent correctly notes, these statutes expressly provide for maximum sentences. However, the General Assembly did not cap these punishments as part of the 2004 amendment. Instead, the "mandatory minimum" language was inserted "to make the language used in those sections consistent with the new statutory definition of 'mandatory minimum' set forth in Code

- 10 -

§ 18.2-12.1." Bullock, 48 Va. App. at 376, 631 S.E.2d at 343.  The dissent ignores the guidance in Bullock that recognizes the limited scope of the 2004 amendment and would create a life sentence crime where no class for the felony is provided for in the criminal statute.

Because appellant has demonstrated error as to the imposition of a ten-year term of incarceration, we must determine whether affirming that sentencing order "'would result in a grave injustice.'" Howard, 281 Va. at 462, 706 S.E.2d at 889 (quoting Gheorghiu, 280 Va. at 689, 701 S.E.2d at 413-14).  "Where the sentence imposed is in excess of that prescribed by law, that part of the sentence which is excessive is invalid." Deagle v. Commonwealth, 214 Va. 304, 305, 199 S.E.2d 509, 510 (1973).  "Denying [a defendant] his liberty on the basis of a void sentence would impose a grave injustice upon him[, and t]he application of the ends of justice exception is, therefore, fully justified." Charles v. Commonwealth, 270 Va. 14, 20, 613 S.E.2d 432, 435 (2005).  Here, the trial court sentenced appellant to a term of incarceration of ten years.  Because we hold that Code § 18.2-53.1 authorizes the imposition of only a three-year mandatory term of incarceration, the seven-year excess is invalid.  Thus, the ends of justice exception applies, and Rule 5A:18 does not bar our consideration of appellant's argument that her sentence for the use of a firearm conviction exceeded the statutory maximum.

For these reasons, we hold that the trial court erred in sentencing appellant to a ten-year term of incarceration and remand with instructions for entry of an order consistent with this opinion.[7]

---

[7] Ordinarily, "a criminal defendant . . . is entitled to a new sentencing hearing" where "a sentence [is] imposed in violation of a prescribed statutory range of punishment." Rawls, 278 Va. at 221, 683 S.E.2d at 549.  However, because a term of three years imprisonment is the only available sentence for the trial court to impose, a new sentencing hearing is unnecessary. See, e.g., Dargan v. Commonwealth, 27 Va. App. 495, 499, 500 S.E.2d 228, 230 (1998) (affirming where the trial court deleted the excessive portion of an invalid sentence).  Accordingly, we need not remand for a new sentencing hearing.

B.

IMPOSITION OF ACTIVE SENTENCE

Appellant next argues the trial court erred in sentencing her to a thirteen-year active sentence for the robbery convictions in light of the mitigating evidence she presented at the sentencing hearing.  Although appellant acknowledges "the trial court sentenced [her] within the statutory maximum allowable sentence" for the robbery convictions, she nevertheless contends her evidence "should have resulted in a lower sentence."

"When a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion." Abdo v. Commonwealth, 218 Va. 473, 479, 237 S.E.2d 900, 903 (1977); see, e.g., Fortune v. Commonwealth, 12 Va. App. 643, 651, 406 S.E.2d 47, 51 (1991).  Code § 18.2-58 sets the range of punishment for robbery at "life or any term not less than five years."  Here, the trial court sentenced appellant to twenty years incarceration for each of the robbery convictions and suspended fifteen years of each sentence.  Further, upon entry of an order consistent with the views expressed in this opinion, the three years of active incarceration originally imposed will remain in full force and effect.  The trial court's sentences in this case were therefore within the statutory limits for robbery, and we find no evidence of an abuse of discretion.

III.

CONCLUSION

Because Code § 18.2-53.1 does not contain a maximum range of punishment or a specification of the class of the offense, we hold a trial court may sentence a defendant only to a mandatory term of imprisonment of three years for the first conviction or a mandatory term of imprisonment of five years for a second or subsequent conviction.  Furthermore, an independent review of the history of Code § 18.2-53.1 and the 2004 amendment compels this Court to accept

the Commonwealth's concession that the statute prescribes only a three-year mandatory sentence for a first offense. The trial court therefore erred in sentencing appellant to a ten-year term of incarceration. Further, the trial court did not err in imposing an active incarceration sentence of thirteen years because the sentence fell within the statutory limits for robbery. For these reasons, we affirm in part, reverse in part, and remand with instructions.

<u>Affirmed in part,</u>
<u>reversed in part,</u>
<u>and remanded</u>
<u>with instructions.</u>

Kelsey, J., dissenting in part.

Code § 18.2-53.1 establishes a "mandatory *minimum*" term of imprisonment — not a mandatory *maximum*. Because the statute sets no upper limit to the potential term of imprisonment, there is no statutory limit. The trial court, therefore, did not err by imposing a ten-year sentence, with seven years suspended, for Hines's violation of Code § 18.2-53.1.

I. MINIMUM MEANS MINIMUM

In 2004, the General Assembly amended the felony-firearm statute. "As a general rule, a presumption exists that a substantive change in law was intended by an amendment to an existing statute." Commonwealth v. Bruhn, 264 Va. 597, 602, 570 S.E.2d 866, 869 (2002) (citations omitted). That presumption holds true here. The earlier version of Code § 18.2-53.1 authorized a *fixed* "term of imprisonment" of three years (for the first offense) or five years (for subsequent offenses) that could not be suspended in whole or in part. The 2004 amendment added "mandatory minimum" to qualify the "term of imprisonment." 2004 Va. Acts ch. 461 (effective July 1, 2004).

The phrase "mandatory minimum" — when used in *scores of other criminal statutes* — means the minimum unsuspendable sentence at the lowest point of a statutory sentencing range.[8] This is perfectly sensible. A minimum implies a maximum. Both words logically presuppose a range of options starting with one and ending with the other.[9]

---

[8] See, e.g., Code §§ 3.2-4212; 4.1-305; 15.2-1812.2; 16.1-253.2; 18.2-36.1; 18.2-36.2; 18.2-46.3:3; 18.2-51.1; 18.2-57; 18.2-60.4; 18.2-61; 18.2-67.1; 18.2-67.2; 18.2-121; 18.2-154; 18.2-186.4; 18.2-248; 18.2-248.01; 18.2-248.03; 18.2-248.1; 18.2-248.5; 18.2-255; 18.2-255.2; 18.2-266.1; 18.2-270; 18.2-308.1; 18.2-308.2:2; 18.2-374.1; 18.2-374.1:1; 18.2-374.3; 46.2-301; 46.2-341.28; 46.2-357; 46.2-391; 46.2-865.1; 53.1-203.

[9] In every instance where the legislature has chosen to do otherwise — by capping the punishment at the mandatory minimum sentence — *it has done so expressly*. See Code §§ 18.2-308.2(A) (possessing firearm after conviction of violent felony punished as Class 6 felony (up to five years imprisonment), with a five-year mandatory minimum); 18.2-308.4(C)

- 14 -

Faithful to the textualist approach to statutory interpretation, Virginia courts presume "the legislature 'chose, with care,' the specific words of the statute." Va. Emp't Comm'n v. Cmty. Alts., Inc., 57 Va. App. 700, 706, 705 S.E.2d 530, 533 (2011) (citation omitted). Consequently, we cannot "subtract from the words used in the statute," Posey v. Commonwealth, 123 Va. 551, 553, 96 S.E. 771, 771 (1918), but must give "reasonable effect to *every word* used," Riverside Owner, L.L.C. v. City of Richmond, 282 Va. 62, 69, 711 S.E.2d 533, 537 (2011) (citation omitted and emphasis added); Antisdel v. Ashby, 279 Va. 42, 48, 688 S.E.2d 163, 166 (2010). Each word of a statute should be given its "common, ordinary and accepted understanding." Cmty. Alts., Inc., 57 Va. App. at 706, 705 S.E.2d at 533 (citation omitted).

The common, ordinary, and accepted understanding of the word "minimum" means minimum — not maximum. To me, the analysis begins and ends there. Like Justice Eggleston, I believe it "is our duty to interpret the statute as written and when this is done our responsibility ceases." Lynchburg v. Suttenfield, 177 Va. 212, 221, 13 S.E.2d 323, 326 (1941); see also Continental Baking Co. v. Charlottesville, 202 Va. 798, 805, 120 S.E.2d 476, 480 (1961). The one canon of construction that precedes all others is that "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy, 548 U.S. 291, 296 (2006) (citation omitted). "We can only administer the law as it is written." Uninsured Emp'rs Fund v. Wilson, 46 Va. App. 500, 506, 619 S.E.2d 476, 479 (2005) (quoting Coalter v. Bargamin, 99 Va. 65, 71, 37 S.E. 779, 781 (1901)).

---

(possessing firearm while possessing certain drugs with the intent to distribute punished as Class 6 felony (maximum five years imprisonment), with a five-year mandatory minimum); 46.2-1110 (misdemeanor conviction and fine of $1,000 and $2,500 for subsequent offenses, imposed as a mandatory minimum).

Seeking to rebut the presumption that the 2004 amendment changed the law by replacing a *fixed* term of imprisonment with a mandatory *minimum* term of imprisonment, Hines correctly points out that Code § 18.2-53.1 does not state a maximum prison term — either by specifically stating an upper limit or by incorporating a maximum term from the classification of felonies found in Code § 18.2-10. Hines finds this omission anomalous because, read literally, Code § 18.2-53.1 authorizes life imprisonment. This anomaly, Hines reasons, empowers us to blue-pencil the statute, leaving "mandatory" but excising "minimum" from the 2004 amendment. For several reasons, I am unwilling to do so.

To begin with, what Hines views as a legal anomaly is actually settled law. It is not at all "bizarre" for a legislature to enact a mandatory minimum sentence and "decline to state a maximum." United States v. Turner, 389 F.3d 111, 120 (4th Cir. 2004); see also Ex parte Robinson, 474 So. 2d 685, 686 (Ala. 1985) ("Our research reveals many statutes, both federal and state, which fix a minimum penalty for an offense but which fail to prescribe a maximum penalty."). When legislatures impose only a "minimum sentence" they leave "it within the power of the court to fix the maximum sentences." Turner, 389 F.3d at 120 (quoting Binkley v. Hunter, 170 F.2d 848, 849 (10th Cir. 1948)). In short, these statutes impose "a mandatory minimum sentence, not a mandatory maximum sentence." United States v. Lego, 855 F.2d 542, 546 (8th Cir. 1988). More than a few courts have found this principle "so self-evident as to not need explanation." Turner, 389 F.3d at 120.

In such cases, federal and state courts uniformly hold that "in the absence of a statutory maximum penalty, the maximum penalty when a term of not less than a certain number of years is provided, means that the maximum is life imprisonment." United States v. Sias, 227 F.3d 244, 247 (5th Cir. 2000); see also Ex parte Robinson, 474 So. 2d at 686. This conclusion merely reflects the "sensible rule of statutory construction whereby the absence of a specified maximum

simply means that the maximum is life imprisonment." Turner, 389 F.3d at 120. The mandatory minimum provision, after all, "is designed to serve as the floor, not the ceiling" for criminal sentences. Sias, 227 F.3d at 247.[10]

A multitude of courts recognize that the minimum-means-minimum principle applies to felony-firearm statutes no less than any other criminal statute. Id.[11] The majority cites no cases suggesting otherwise, and I am unaware of any. Nor am I persuaded by the majority's cursory dismissal of this unbroken line of federal and state cases on the *ipse dixit* that they have little in common with our case. *Ante* at 9. Because the legal issue is the same, they have everything in common. Neither Hines nor the majority, therefore, can shoulder the burden of rebutting the presumption that the 2004 amendment effected a "substantive change in law," Bruhn, 264 Va. at 602, 570 S.E.2d at 869 (citations omitted), by replacing a *fixed* term of imprisonment to a mandatory *minimum* term of imprisonment.

---

[10] See United States v. Wolak, 923 F.2d 1193, 1199 (6th Cir. 1991); United States v. Jackson, 835 F.2d 1195, 1197 (7th Cir. 1987); see also Ex parte Robinson, 474 So. 2d 685, 686 (Ala. 1985); State v. Stephens, 507 S.W.2d 18, 22 (Mo. 1974); State v. Turnbow, 466 P.2d 100, 101 (N.M. 1970); State v. Sisneros, 464 P.2d 924, 925 (N.M. Ct. App. 1970).

[11] United States v. Ortiz-Garcia, 492 F.3d ___, 2011 U.S. App. LEXIS 24204, at *13-14 (1st Cir. Dec. 7, 2011); United States v. Rozier, 598 F.3d 768, 772 (11th Cir. 2010); United States v. Shabazz, 564 F.3d 280, 289 (3d Cir. 2009); United States v. Johnson, 507 F.3d 793, 798 (2d Cir. 2007); United States v. Gamboa, 439 F.3d 796, 811 (8th Cir. 2006); United States v. Dare, 425 F.3d 634, 642 (9th Cir. 2005); United States v. Weems, 322 F.3d 18, 26 (1st Cir. 2003); United States v. Avery, 295 F.3d 1158, 1170 (10th Cir. 2002); United States v. Cristobal, 293 F.3d 134, 147 (4th Cir. 2002); United States v. Harrison, 272 F.3d 220, 225-26 (4th Cir. 2001); United States v. Pounds, 230 F.3d 1317, 1319 (11th Cir. 2000); United States v. Brame, 997 F.2d 1426, 1428 (11th Cir. 1993); United States v. Fields, 923 F.2d 358, 362 (5th Cir. 1991), overruled on other grounds by United States v. Lambert, 984 F.2d 658, 662 (5th Cir. 1993) (*en banc*); United States v. Tisdale, 921 F.2d 1095, 1100 (10th Cir. 1990); United States v. Alvarez, 914 F.2d 915, 919 (7th Cir. 1990), superseded on other grounds by Stinson v. United States, 508 U.S. 36, 47 (1993); United States v. Williams, 892 F.2d 296, 304 (3d Cir. 1989), superseded on other grounds by Stinson, 508 U.S. at 47; United States v. Blannon, 836 F.2d 843, 845 (4th Cir. 1988); United States v. Jackson, 835 F.2d 1195, 1197 (7th Cir. 1987); Walberg v. United States, 763 F.2d 143, 148-49 (2d Cir. 1985); State v. Norton, 949 S.W.2d 672, 678 (Mo. Ct. App. 1997); State v. Fulks, 173 S.E. 888, 889 (W. Va. 1933). Accord *supra* n.10.

II. THE BULLOCK DIGRESSION

The one case the majority does rely upon, Bullock v. Commonwealth, 48 Va. App. 359, 631 S.E.2d 334 (2006), is neither dispositive nor particularly relevant. Bullock held the 2004 amendment to Code § 18.2-53.1 did not supersede our prior caselaw interpreting the statute to forbid judicial suspension of mandatory sentences. The majority, however, quotes Bullock for a far broader proposition: "As we have previously noted, 'the General Assembly did not intend, in enacting [the 2004 amendment], to substantively change the existing scope of Code § 18.2-53.1.' Bullock, 48 Va. App. at 377, 631 S.E.2d at 343." *Ante* at 7.

The majority, however, quotes only half of the pertinent sentence from Bullock. The omitted half includes an important qualification. The full sentence from Bullock reads: "Plainly, then, the General Assembly did not intend, in enacting [the 2004 amendment], to substantively change the existing scope of Code § 18.2-53.1 *to permit suspension under Code § 16.1-272(A)(1)(iii) of the mandatory sentences required by Code § 18.2-53.1*." Bullock, 48 Va. App. at 377, 631 S.E.2d at 343 (emphasis added). The truncated quote attributed by the majority to Bullock has been taken out of context. And, taken in context, Bullock adds nothing to the issue before us in this case.

In a footnote, *ante* at 7-8 n.6, the majority seeks to rehabilitate its incomplete quote from Bullock by attempting to connect the holding in that case — concluding that the 2004 amendments to Code § 18.2-53.1 did not change existing law forbidding suspension of a mandatory sentence — to the broader revisions proposed by the Virginia State Crime Commission prior to the 2004 amendments. The connection in Bullock made sense because the Commission had repeatedly emphasized that mandatory sentences could not be suspended. Here, the connection makes no sense because the issue is entirely different. The question in our

case is not whether a mandatory sentence can be suspended, but whether an unsuspendable mandatory *minimum* sentence is truly a *minimum* sentence.

Nothing in the Commission's recommendations suggested a mandatory minimum sentence, standing alone, should be interpreted as a maximum sentence. See Virginia State Crime Commission Report, House Doc. No. 15, at 5 (2004), available at http://leg2.state.va.us/ dls/h&sdocs.nsf/By+Year/HD152004/$file/HD15_2004.pdf.  Though the Commission's report recommended dozens of statutory changes, see id., Part II at 1-7, Part V at 32-41, none mentioned Code § 18.2-53.1.  If anything, the legislative history shows just the opposite of what the majority assumes.  During the 2004 session, the General Assembly defeated two bills seeking to amend Code § 18.2-53.1 while leaving intact the prior language mandating *fixed* terms of imprisonment.  See House Bill No. 1053H1 (substitute offered Feb. 13, 2004); House Bill No. 377 (offered Jan. 14, 2004).  Taking a different approach, the General Assembly replaced the fixed terms of the pre-2004 version of Code § 18.2-53.1 with new "mandatory minimum" terms of imprisonment.  See 2004 Va. Acts ch. 461 (effective July 1, 2004).

III.   THE LARGER STATUTORY CONTEXT

Equally unconvincing is the majority's reliance on Code § 18.2-14, which merely states that unclassified felonies should be punished "according to the punishment prescribed in the section or sections thus defining the offense."  I do not understand what this adds to the analysis. Code § 18.2-53.1 enacts an unclassified felony.  So, under Code § 18.2-14, we look solely to Code § 18.2-53.1 (rather than Code § 18.2-10's felony punishment classifications) to determine the sentence to be imposed.  But this tells us nothing about what Code § 18.2-53.1 means by imposing a "mandatory minimum term of imprisonment."  Code § 18.2-14 begs, but does not answer, the question before us.

- 19 -

Along the same lines, I see no interpretative relevance to Code § 18.2-12.1, which confirms existing law that a "mandatory minimum" sentence cannot be suspended in full or in part. This provision merely states what we already know: The mandatory minimum terms of imprisonment in Code § 18.2-53.1 cannot be suspended. See Bullock, 48 Va. App. at 377, 631 S.E.2d at 343. A sentence above the minimum, of course, can be, and often is, suspended. If Code § 18.2-12.1 really meant for a "mandatory *minimum*" term to be a "mandatory *maximum*" term, it would be in conflict with a myriad of statutes imposing an unsuspendable "mandatory minimum" term of imprisonment while simultaneously authorizing a higher, entirely suspendable, maximum term. See *supra* at 14 n.8.

## IV. PLAIN MEANING & STATUTORY ABSURDITY

I also question Hines's underlying assumption, apparently shared by the majority, that the sheer possibility of a life sentence for violating Code § 18.2-53.1 would be a manifest absurdity. *Ante* at 9. Working from the statutory text, Virginia courts "strive to give that language a 'literal construction' unless doing so 'would involve a manifest absurdity.'" Johnson v. Commonwealth, 58 Va. App. 625, 641, 712 S.E.2d 751, 759 (2011) (citation omitted). The absurdity exception, however, applies only when a literal reading of the statute produces systemic anomalies in a realistic range of likely applications, not in fanciful hypothetical situations.

A literal interpretation of Code § 18.2-53.1 — one that interprets "minimum" to mean minimum, not maximum — cannot be dismissed as a manifest absurdity. No court has ever suggested as much. Nor can we say a life sentence would never be appropriate under this statute. The "mandatory minimum" term of Code § 18.2-53.1 applies to various felons, including murderers and rapists who use firearms to kill, abuse, or torture their victims. I see no manifest absurdity in imposing life imprisonment upon a recidivist murderer or rapist who uses a firearm

to accomplish his crime.[12]  It does not make it absurd to do so simply because the murderer or rapist also deserves equal punishment on the underlying predicate felony.

As for the conjectural possibility that a life sentence could be imposed upon an undeserving criminal, I am content to rely on the good judgment of our trial judges to avoid such immoderate results.  That this trust is well-placed is evidenced by the fact that life sentences are "rarely, if ever, imposed" in felony-firearm cases.  United States v. Stewart, 628 F.3d 246, 258-59 (6th Cir. 2010) (citation omitted).

## V.  THE ATTORNEY GENERAL'S CONCESSION

Unlike the majority, I am unimpressed by what the majority calls the Commonwealth's "concession that the statute prescribes only a three-year mandatory sentence." *Ante* at 13.  I think it fair to call it a concession of sorts, but it is an ambivalent and puzzling one.  The Attorney General's brief quotes from one of our unpublished opinions, Neria v. Commonwealth, No. 3088-07-4, 2009 Va. App. LEXIS 136 (Mar. 24, 2009) (Elder, J.), which held the phrase "mandatory minimum" in another statute, Code § 18.2-270(C), actually meant mandatory *minimum*:

> The statute sets a "mandatory minimum fine of $1,000."  The plain, obvious, and rational meaning of "mandatory minimum fine of $1,000" is that the trial court or jury has the discretion to impose a pecuniary punishment greater than $1,000, and nothing in the statute supports a different conclusion.  Thus, setting the fine at $2,500 was clearly within the discretion of the jury.

Neria, 2009 Va. App. LEXIS 136, at *10.  Adopting our reasoning, the Virginia Supreme Court affirmed in an unpublished order.  Neria v. Commonwealth, No. 090813 (Va. Feb. 19, 2010).  As a "decision on the merits," the Neria affirmance order has precedential value because the

---

[12] Consider, too, the counter-absurdity of capping the sentence of a rapist or murderer using a firearm at three years of imprisonment (under the majority's interpretation of Code § 18.2-53.1) while inconsistently capping the sentence for possessing a firearm and drugs, *even without using it*, at five years (Code § 18.2-308.4).

analytical "grounds" for the decision are "discernible from the four corners of the Court's order." Sheets v. Castle, 263 Va. 407, 411-12, 559 S.E.2d 616, 619 (2002).

Relying on Neria, the Attorney General correctly argues: "Hines, in essence, is asking this Court to *rewrite* the sentencing portion of § 18.2-53.1 by effectively *ignoring* the term 'minimum' in the present statute." Appellee's Br. at 13 (emphasis added). "Had the General Assembly intended the 'mandatory minimum' sentence of three years to be both the minimum and maximum term of imprisonment for an initial violation of Code § 18.2-53.1, it simply would have left the three year sentence to be 'mandatory' instead of amending the statute in 2004 to add the term 'minimum.'" Id.

The Attorney General's brief then takes a surprising turn. After opining on Neria and the plain meaning of the phrase "mandatory minimum," the Attorney General states he feels "constrained" to point out that under Code § 18.2-14, "while perhaps *not* what the General Assembly intended," it "appears" that the three and five-year mandatory minimums in Code § 18.2-53.1 are actually mandatory maximums. Appellee's Br. at 14-15 (emphasis added). As I noted earlier, however, Code § 18.2-14 says no such thing. Code § 18.2-14 merely directs us to the text of Code § 18.2-53.1 (rather than Code § 18.2-10's felony punishment classifications) to determine the sentence to be imposed. Once we limit ourselves to Code § 18.2-53.1, the question still remains whether "mandatory minimum" can be judicially construed to mean mandatory *maximum*.

Because I do not share the Attorney General's angst over Code § 18.2-14, but agree fully with his plain reading of Code § 18.2-53.1, I respect but cannot accept his concession. Virginia courts, of course, "have no obligation to accept concessions of error" and can never be bound by a concession on a "pure question of law." Copeland v. Commonwealth, 52 Va. App. 529, 531, 664 S.E.2d 528, 529 (2008) (citing United States v. Hairston, 522 F.3d 336, 340 (4th Cir. 2008)

(recognizing "the government's concession of error is not binding on this court"), and <u>Logan v. Commonwealth</u>, 47 Va. App. 168, 172, 622 S.E.2d 771, 773 (2005) (*en banc*)). "Pure statutory construction, a matter within the 'core competency of the judiciary,' requires *de novo* review." <u>Citland, Ltd. v. Commonwealth ex rel. Kilgore</u>, 45 Va. App. 268, 275, 610 S.E.2d 321, 324 (2005) (citation omitted). Unlike the majority, I see nothing upon a *de novo* review of the law that "compels this Court," *ante* at 12, to accept the Attorney General's half-hearted concession.

## VI. THE "FISCAL IMPACT" OF THE 2004 AMENDMENT

Lacking any textual or caselaw support for its interpretation, the majority turns to the argument that the "mandatory minimum" term in the 2004 amendment could not mean a minimum sentence because that would cost money and the legislature allegedly failed to allocate funds to pay for it. <u>See</u> *ante* at 8-9 (citing Code § 30-19.1:4). This argument, it seems to me, is the weakest of all. Probably for this reason, Hines did not make it orally or on brief. Nor did the Attorney General mention it. I think the reason why is that no Virginia court has ever failed to enforce the plain meaning of a statute because, it was thought, the legislature failed to consider its economic consequences. This appears to be the first time such an argument has been factored into the traditional rules of statutory construction.

What is more, the assumption underlying this argument rises no higher than a speculative guess. None of us can explain the absence of a specific appropriation for the 2004 amendment to Code § 18.2-53.1. It could be the Virginia Criminal Sentencing Commission simply misread the proposed amendment and, as a consequence, neglected to prepare a fiscal impact statement under Code § 30-19.1:4(A). Perhaps those charged with scoring the fiscal impact relied upon the State Crime Commission Report, not realizing the recommendations in the report addressed only nineteen of the mandatory minimum statutes needing amendment and conspicuously omitted any mention of Code § 18.2-53.1. <u>See</u> VCC Report, *supra*, at 37-38. Maybe this specific funding

issue got lost in the larger decision by the General Assembly in 2004 to build two new state prisons at a cost of over $140 million. See 2004 Va. Acts Spec. Sess. I, ch. 4, at 493. A year later, in 2005, the General Assembly authorized yet another new prison, see 2005 Va. Acts, ch. 951, at 2281-82, which, after being built, was promptly mothballed without ever being used.

I do not know what to make of these budgeting and appropriation decisions. But I do know what not to make of them. No matter the plausible explanations, none persuade me to interpret "minimum" in Code § 18.2-53.1 to mean anything other than minimum.

### VII. CONCLUSION

In sum, the plain wording of Code § 18.2-53.1 establishes a mandatory *minimum* term of imprisonment — not a mandatory *maximum*. Because the statute sets no upper limit to the potential term of imprisonment, there is no statutory limit. In this case, therefore, the trial court did not err by imposing a ten-year sentence, with seven years suspended, for Hines's violation of Code § 18.2-53.1.[13]

---

[13] I concur with the majority's holding that the trial court did not err in imposing an active sentence of thirteen years for Hines's robbery convictions. See *ante* at 1, 12-13.