# COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges O'Brien, Causey and Friedman
Argued at Norfolk, Virginia


JAMES DERRICK FERRELL

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0460-22-1                      DORIS HENDERSON CAUSEY
                                                    FEBRUARY 14, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Michael A. Gaten, Judge

Charles E. Haden for appellant.

Virginia B. Theisen, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Following his guilty pleas pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970), the trial

court convicted James Derrick Ferrell of abduction, robbery, two counts of breaking and entering,

grand larceny of a firearm, attempted abduction, grand larceny, grand larceny of an automobile, four

counts of the use of a firearm in the commission of a felony, possession of a firearm by a convicted

felon, possession of a stun weapon by a convicted felon, wearing a mask in public, brandishing a

firearm, and destruction of property.  The trial court sentenced Ferrell to a total of ninety-nine years

and twenty-four months of incarceration with seventy-nine years and twenty-four months

suspended.  On appeal, Ferrell challenges the voluntariness of his guilty pleas and asserts that the

trial court abused its sentencing discretion.  For the following reasons, we affirm the trial court's

judgment.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

Before accepting Ferrell's pleas, the trial court conducted a colloquy with him to ensure that they were entered freely and voluntarily. During the colloquy, Ferrell confirmed that he fully understood the charges against him and what the Commonwealth would need to prove to convict him. Ferrell confirmed that he had consulted his attorney and discussed possible defenses. The trial court and the Commonwealth reviewed each charge and its maximum potential sentence with Ferrell. He confirmed that he understood each potential sentence. Ferrell also understood that by pleading guilty he was waiving his rights to a trial by jury, to remain silent, and to confront the Commonwealth's witnesses.

The Commonwealth proffered that in February 2020, Michael Raines and his wife, Deann Marunich, returned home after spending several days out of town. When Raines opened the front door, a masked individual pointed a gun at him and commanded him to come inside. Raines recognized the gun as his own .22 caliber pistol. The perpetrator threw a length of cord at Raines and instructed him to bind his hands, back up, and get on his knees. Marunich first attempted to enter the home but ran when the perpetrator pointed the gun at her and ordered her to come inside. When Marunich ran, the perpetrator also fled, taking the gun, a stun weapon, several pocketknives, and jewelry. Raines untied himself and called the police. While doing so, he discovered documents and luggage that did not belong to him inside the home. The documents included a birth certificate, a high school diploma, a child custody petition, some child custody arrangement paperwork, an adoption contact, and a stock dividend payout agreement, all belonging to Ferrell.

---

[1] On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

Two days later, a member of the Little Zion Baptist Church arrived at the church around 5:00 a.m. and found the rear door open even though he had secured the doors the previous night. The church had been "rummaged through" and several items were missing, including eight dollars in cash, two safes, keys to a Chevrolet van, and the van itself. The damage to the church was less than $1,000. The next day, police found the stolen van in a 7-Eleven parking lot, arrested its driver, Ferrell, and, in a search of the van, recovered Raines's gun.

The trial court accepted Ferrell's guilty pleas in June 2021. Based on his pleas and the proffered evidence, the court convicted Ferrell of abduction, robbery, two counts of breaking and entering, grand larceny of a firearm, attempted abduction, grand larceny, grand larceny of an automobile, four counts of the use of a firearm in the commission of a felony, possession of a firearm by a convicted felon, possession of a stun weapon by a convicted felon, wearing a mask in public, brandishing a firearm, and destruction of property.

At the sentencing hearing in February 2022, Ferrell's cousin testified that Ferrell would not have committed these crimes if he were not addicted to drugs. She stated that his drug dependence started four years prior, following the deaths of his father, grandmother, and grandfather, and the dissolution of Ferrell's abusive marriage. His cousin testified that he was an amazing father to his two daughters and asked the trial court for mercy as it sentenced Ferrell. She indicated her willingness to assist him in maintaining his sobriety and family relationships. She also agreed to help him follow any conditions that the trial court imposed on him.

Ferrell's mother also testified at the hearing. She said that his addiction changed him. She described Ferrell as a hard worker whose coworkers respected him. She testified that she believed Ferrell had "done his time," viewing the two years he had been in jail as sufficient punishment. Emphasizing his acceptance into Regenesis, a substance abuse treatment program, Ferrell's mother

- 3 -

urged the court to consider imposing counseling rather than further imprisonment. She also committed herself to assisting Ferrell with whatever the trial court ordered him to do.

The Commonwealth acknowledged as mitigating factors Ferrell's addiction, family support, and lack of criminal history for firearm offenses before 2018. But it argued that the lenient sentencing Ferrell had received for offenses since then represented multiple wasted opportunities for Ferrell to recover and better himself.[2] The Commonwealth anticipated Ferrell requesting the mandatory minimum sentences to be run concurrently, and it objected based on the nature of the charges. The Commonwealth noted that members of the community were severely victimized and traumatized by Ferrell's actions.

Ferrell took responsibility for his actions and asserted that his family were also victims. He implored the court to let him participate in a therapeutic program and requested that it consider running his sentences concurrently where possible. In allocution, Ferrell apologized to the trial court. He expressed his wish that he could apologize directly to the victims and admitted his drug use, stating that he was "under some severe methamphetamine psychosis" at the time of the offenses. Ferrell asked for mercy, insisting that he was "a very fixable person."

After considering the evidence and arguments, the trial court sentenced Ferrell to ninety-nine years and twenty-four months' imprisonment, with seventy-nine years and twenty-four months suspended. The court acknowledged that people make mistakes, calling Ferrell's crimes "drug fueled." But the trial judge reiterated his obligation to consider the victims and what Ferrell's actions caused them to suffer. The court found that it needed to protect the victims with the sentence. The trial court denied Ferrell's request to run his sentences concurrently, finding that "the Court may have some flexibility running concurrently, but I do think that defeats the purpose of the mandatory minimums in the [G]eneral [A]ssembly." This appeal follows.

---

[2] Ferrell had a prior conviction for credit card larceny in 2019.

ANALYSIS

*Guilty Pleas*

Ferrell argues that the trial court erred in accepting his guilty pleas because he did not enter them voluntarily, knowingly, and intelligently. He argues that the record failed to establish that he was aware of the elements of the offenses, their range of possible penalties, and that the trial court was not bound by the discretionary sentencing guidelines. Ferrell also argues that he was not made aware of the various collateral consequences of his pleas, including the loss of his rights to vote or possess a firearm and the disqualification of certain public benefits and occupational licenses. Relying on *Padilla v. Kentucky*, 559 U.S. 356 (2010), Ferrell suggests that the failure to advise him of those collateral consequences rendered his pleas invalid.[3] Assuming, without deciding, that Ferrell's arguments are preserved under Rule 5A:18, we proceed to the merits of the case. After considering the merits, we hold that the trial court did not err in accepting Ferrell's guilty pleas.

As a defendant who enters a guilty plea waives several rights, a "plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'" *Bousley v. United States*, 523 U.S. 614, 618 (1998) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady*, 397 U.S. at 748. "For a guilty plea to be constitutionally valid, a defendant must be made aware of all the direct, but not the collateral, consequences of his plea." *Brown v. Commonwealth*, 297 Va. 295, 302 (2019) (quoting *Meyer v. Branker*, 506 F.3d 358, 367-68 (4th Cir. 2007)). A "trial court is not required to discuss every nuance of the law regarding a

---

[3] Ferrell's reliance on *Padilla* is inapposite. That case did not address the voluntariness of the defendant's guilty plea. 559 U.S. at 374-75. Rather, *Padilla* discussed a defendant's ineffective counsel claim based on his attorney's failure to properly explain to the defendant the deportation implications of his guilty plea. *Id.* Ferrell has neither alleged nor shown a denial of effective assistance of competent counsel here.

defendant's plea in order to render a guilty plea voluntary and knowing." *Zigta v. Commonwealth*, 38 Va. App. 149, 154 (2002). To withstand scrutiny on appeal, the record must contain "an affirmative showing that [the guilty plea] was intelligent and voluntary." *Boykin v. Alabama*, 395 U.S. 238, 242 (1969).

No authority requires the trial court to review each of the specific elements of an offense; instead, the law requires that the court ensure that the defendant understands the nature of the charges. *See* Rule 3A:8(b)(1) ("A circuit court may not accept a plea of guilty . . . without first determining that the plea is made . . . with an understanding of *the nature* of the charge and the consequences of the plea." (emphasis added)); Rule 7C:6 ("A court must not accept a plea of guilty or nolo contendere to any misdemeanor charge punishable by confinement in jail without first determining that the plea is made voluntarily with an understanding *of the nature* of the charge and the consequences of the plea." (emphasis added)); *Henderson v. Morgan*, 426 U.S. 637, 645 (1976) (holding that a defendant must receive "real notice of the true *nature* of the charge against him" for a plea to be voluntary (emphasis added) (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941))).

No authority requires the trial court to inform a defendant that the discretionary sentencing guidelines are not binding.

Here, the record demonstrates that the trial court conducted an extensive colloquy with Ferrell, which affirmatively shows that his guilty pleas were entered knowingly, voluntarily, and intelligently. Ferrell acknowledged that he understood the elements of the charges against him, what the Commonwealth was required to prove to convict him, and the potential maximum sentence he could receive for each charge. In addition, Ferrell knew that he was waiving several important trial rights, including his rights to a trial by jury, to remain silent, and to confront the Commonwealth's witnesses. The record shows that he was aware of the nature of the charges, the

possible penalties for these charges, and the consequences of his pleas, to the extent required by law. Accordingly, we conclude that the record contains an affirmative showing that Ferrell entered his guilty pleas knowingly, voluntarily, and intelligently. Thus, we hold that the trial court did not err in accepting Ferrell's guilty pleas.

*Sentencing*

Ferrell next argues that the trial court abused its discretion by sentencing him to twenty years of active incarceration. He alleges that he "showed appropriate remorse" and asked the court to "show mercy." He argues that the trial court failed to adequately consider his mitigating circumstances, including that he "had been a law-abiding member of his [community] for the first 35 years of his life" and that the crimes were committed "in a time of stress and emotional upset" after the loss of several close family members. Ferrell also contends that the trial judge should have run his mandatory minimum sentences concurrently and erred by concluding that it lacked authority to do so. Because there was no abuse of discretion, we affirm.

"We review the trial court's sentence for abuse of discretion." *Scott v. Commonwealth*, 58 Va. App. 35, 46 (2011). "[W]hen a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016) (quoting *Alston v. Commonwealth*, 274 Va. 759, 771-72 (2007)). "[O]nce it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end." *Thomason v. Commonwealth*, 69 Va. App. 89, 99 (2018) (quoting *Minh Duy Du*, 292 Va. at 565).

Here, Ferrell's sentences were within the sentencing ranges set by the legislature. *See* Code §§ 18.2-10, 18.2-11, 18.2-26, 18.2-47, 18.2-53.1, 18.2-58, 18.2-91, 18.2-95, 18.2-137,

18.2-282, 18.2-308.2, 18.2-422. Under binding precedent, such evidence precludes further review.

Additionally, it was within the trial court's purview to weigh Ferrell's mitigating evidence. *Keselica v. Commonwealth*, 34 Va. App. 31, 36 (2000). "Criminal sentencing decisions are among the most difficult judgment calls trial judges face." *Minh Duy Du*, 292 Va. at 563. "Because this task is so difficult, it must rest heavily on judges closest to the facts of the case—those hearing and seeing the witnesses, taking into account their verbal and nonverbal communication, and placing all of it in the context of the entire case." *Id.*

Here, the record demonstrates that the trial court considered the mitigating evidence and circumstances Ferrell cites on appeal, including his status as a law-abiding citizen for the first thirty-five years of his life, steady employment, family life, and, in pleading guilty, acceptance of responsibility for the offenses. Balanced against those circumstances, however, were the severity of the crimes Ferrell committed, including the two-day span of the offenses, his threatening the victims with a stolen gun, and the theft of weapons, safes, and a vehicle. The trial court acknowledged that sometimes people make mistakes and Ferrell's crimes were "drug fueled" but concluded that it needed to protect the victims with a fitting sentence. After considering all the circumstances, the trial court imposed the sentence that it deemed appropriate.

Lastly, citing to *Brown v. Commonwealth*, 284 Va. 538, 545 (2012), Ferrell argues that the trial court erred by concluding that it lacked the authority to run the mandatory minimum terms of incarceration for his firearm offenses concurrently. To support his argument, Ferrell invites this Court to fixate on the trial court's statement that running the mandatory minimum sentences concurrently would "defeat[] the purpose of the mandatory minimums in the [G]eneral [A]ssembly." We decline to do so.

Multiple sentences are presumed to run consecutively unless the trial court, in the exercise of its discretion, orders them to run concurrently under Code § 19.2-308. *Commonwealth v. Botkin*, 68 Va. App. 177, 180 (2017). "[T]he judgment of a trial court comes to us on appeal with a presumption that the law was correctly applied to the facts." *Yarborough v. Commonwealth*, 217 Va. 971, 978 (1977). "Only 'clear evidence to the contrary in the record' suffices to rebut the presumption." *Groves v. Commonwealth*, 50 Va. App. 57, 62 (2007) (quoting *Campbell v. Commonwealth*, 39 Va. App. 180, 186 (2002)). Consistent with the presumption, "we will not 'fix upon isolated statements of the trial judge taken out of the full context in which they were made, and use them as a predicate for holding the law has been misapplied.'" *Id.* (quoting *Bullock v. Commonwealth*, 48 Va. App. 359, 368 (2006)).

The terms of Ferrell's incarceration were presumed to run consecutively, and a careful reading of the trial court's judgment belies his suggestion that it concluded it lacked the authority to run the mandatory minimum terms of incarceration concurrently. In fact, the trial court explicitly recognized that it had flexibility to run the sentences concurrently. Nevertheless, after considering the mitigating evidence against the aggravating circumstances of the offenses, the trial court, in the permissible exercise of its discretion, determined that Ferrell should serve his sentences consecutively. That decision will not be disturbed on appeal.

CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*