UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Raphael and Bernhard
Argued at Arlington, Virginia


KYLE A. BURKS, SOMETIMES KNOWN AS
 KYLE ANDREW BURKS

                                                                  MEMORANDUM OPINION* BY
v.        Record No. 0254-25-4                          JUDGE DAVID BERNHARD
                                                                        MARCH 31, 2026

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF WINCHESTER
William W. Eldridge, IV, Judge

Lauren E. Brice, Assistant Public Defender (Virginia Indigent
Defense Commission, on briefs), for appellant.

Craig Stallard, Senior Assistant Attorney General (Jason S. Miyares,[1]
Attorney General, on brief), for appellee.


Kyle Andrew Burks appeals the trial court's finding that he violated the terms and

conditions of his probation by not obeying his probation officer's instructions.  He contends that

the evidence failed to demonstrate a willful violation sufficient to constitute reasonable cause to

revoke the suspension of his sentence and that the trial court applied an erroneous legal standard.

This Court holds the trial court did not abuse its discretion in finding that Burks willfully

violated Condition 6 of his probation when, after receiving extensive assistance from his

probation officer in accessing the required virtual treatment platform, he accumulated three

unexcused absences from his court-ordered sex offender treatment program, made no effort to

obtain excused absences as directed, and was discharged for non-compliance.  Because the

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

record supports the conclusion that Burks's failure to complete the program was the product of his own conduct rather than circumstances beyond his control, we affirm the circuit court's judgment.

BACKGROUND

We consider the evidence from a revocation hearing in the light most favorable to the Commonwealth, as the prevailing party, including all the reasonable and legitimate inferences that may properly be drawn from that evidence. *Green v. Commonwealth*, 75 Va. App. 69, 76 (2022). "In revocation appeals, the trial court's 'findings of fact and judgment will not be reversed unless there is a clear showing of abuse of discretion.'" *Id.* (quoting *Jacobs v. Commonwealth*, 61 Va. App. 529, 535 (2013)).

On May 31, 2016, the trial court convicted Burks of burglary and two counts of sexual battery. The court sentenced him to a total of 20 years' and 24 months incarceration, with 16 years and 24 months suspended. His suspended sentence was conditioned on, among other things, his successful completion of supervised probation and a "therapeutic program." While incarcerated, Burks "received Sex Offender services," though his institutional treatment provider noted that the services were not a "substitute for outpatient treatment" and that Burks "should at minimum receive outpatient sex offender treatment." Indeed, while incarcerated, Burks had "failed to successfully implement the skills and strategies he ha[d] learned over his numerous sex offender treatment participations." Burks finished his term of active incarceration and began supervised probation in February 2024.

On the day he was released, he met with his probation officer, Brian Loomis, who explained the "expectations of supervision" and that Burks was required to register as a sex offender[2] and

---

[2] Burks's registration requirement arose from prior offenses, as the sexual battery convictions were misdemeanors and not "Registry Offenses." In addition, Loomis testified that he referred Burks to sex offender treatment based on the discharge summary from his treatment while incarcerated "and the nature of the underlying conditions."

participate in weekly "group treatment sessions." Burks "was resistant" to those instructions, "stating that he had completed Sex Offender program[m]ing while" incarcerated, but his probation officer reiterated that "group treatment was the norm and would be required."

Six months later, Loomis reported that Burks had violated his probation by failing to comply with Loomis's directions and instructions. Burks had been assigned to a treatment group in March 2024, but "for the next several months" he "balk[ed] at participating" and insisted that "he was not supposed to be in the group and that he did not meet the legal definition of a Sex Offender." As of April 19, 2024, he had not yet begun treatment "and claimed that []he knew little about technology." Accordingly, Loomis "created an email account for [Burks] to use" to attend treatment sessions. Eleven days later, Burks "indicated he needed specialized help from the Probation Office to access his email with the group meeting's Zoom link." Consequently, on May 13, 2024, Loomis went to Burks's "residence to show him how to open his email and click the Zoom link." While there, Loomis saw "one email on [Burks's] phone that appeared to relate to some form of Spam with sexually charged content." Loomis looked at the phone's internet search history, which demonstrated that Burks "had performed internet browsing for 'Strip Clubs.'" Loomis reprimanded Burks.

On May 22, 2024, Burks "claimed to have attempted to log in to his Zoom group," but "there was no evidence that he had" done so. The link was "forwarded" to him again. A month later, Burks sent a text message to Loomis stating, "I know how to work zoom now, so I don't have to come to the office on Wednesday to get on Zoom." He attended two meetings, but his "progress deteriorated" and he had "an unexcused absence on July 10, 2024." Burks claimed he did not attend that session because "the link disappeared." Loomis acknowledged at the hearing that Burks had reported the link problem when it occurred. Loomis nonetheless treated the absence as unexcused.

One week later, on July 17, 2024, Dr. Gravers—Burks's treatment provider—emailed Loomis stating that Burks had "attended group," but he was "disrespectful and angry." The

- 3 -

provider reported that Burks displayed "oppositional behavior, minimization, distortions, and denial." Loomis informed Burks via text message that "attending group was the most important responsibility he had for successfully completing probation." Burks responded with an "angry emoji," though he later claimed that was an accident.

On August 6, 2024, Burks had a second unexcused absence, and Loomis informed him on August 12, 2024, that a third unexcused absence would result in his discharge from the group and a return to court. One week later, on August 19, 2024, Burks texted Loomis that he had a job interview that would prevent him from attending an upcoming "group treatment." Loomis told Burks that he needed to contact his treatment provider to obtain "permission to miss group." Burks did not contact his treatment provider, however, and failed to attend the meeting. His absence was unexcused, and he was discharged from the program.

At the revocation hearing,[3] Loomis testified that he worked with Burks "for a protracted . . . time" to get him "set up with an email address and to get Zoom on his personal phone." Eventually, Burks began participating, and Loomis regularly encouraged him to attend treatment. Loomis clarified that Dr. Gravers would decide whether an absence was excused, which is why he instructed Burks to clear his absence for the job interview with her first.

After the close of the evidence, Burks argued that he had not willfully violated Loomis's instructions because this case was about "technical difficulties" that impeded his ability to attend the group sessions. He insisted that he had tried to attend the sessions, but malfunctioning links and other circumstances prevented him from doing so. The trial court stated that it was Burks's obligation "to get it done" and asked whether there was "an intent element to this." Burks responded that he had "to intend to violate probation" and that a reckless or negligent violation

---

[3] The parties agreed that the alleged violation was a "technical violation" only. Because this was Burks's first technical violation, the trial court revoked and resuspended his suspended sentences, consistent with Code § 19.2-306.1(C).

would not sustain a violation.  He insisted that he missed his meetings because he could not "figure out the electronics."  The Commonwealth suggested there was no "intent element" and asked the trial court to find him in violation, "[r]evoke and resuspend everything," and order "Sex Offender Special Conditions."

The trial court found that Burks had violated the terms of his probation because Loomis instructed him to complete the "group counseling meetings, which he tried to do or did go initially." Regardless of whether "there were issues with the Zoom on some of the meetings," there were "three unexcused absences," which led to his discharge.  Thus, the uncontroverted evidence demonstrated that he did not attend the sessions.  The court emphasized that Burks had a duty to comply with his probation officer's instructions, and he had to "get it done" even if "some links" did not function.  "He should have been jumping up and down back at the counseling center trying to get this worked out if there was truly some sort of technical issue, too, to make sure that he followed his probation officer's directions."  Accordingly, the court revoked and resuspended Burks's suspended sentence, adding as a special condition that Burks "abide by all of the Sex Offender Special Conditions including sex offender counseling."

On appeal, Burks argues there was no reasonable cause to find him in violation because he did not willfully disregard Loomis's instructions.  He contends that "his absences were the result of his inability to figure out the technology required to attend the meetings, not an intentional decision to just not attend."  He maintains that by finding that he should have been "jumping up and down" to "get it done," and by asking whether there was an "intent element," the trial court held him "strictly liable for his issues with attendance" instead of correctly determining whether his dismissal from the group was "the result of a willful action."  Continuing, he contends that the court erred by finding that his dismissal "was the result of a willful act."  Emphasizing his lengthy incarceration before this incident, he argues that he had to "adapt to . . . advances in technology," and his struggles to do so did not constitute a willful violation.  Finally, he says that his last unexcused

- 5 -

absence was the result of an "impossible decision, choosing between" maintaining employment and attending group, which also was not a willful violation.

ANALYSIS

"If the court, after hearing, finds good cause to believe that the defendant has violated the terms of suspension, then the court may revoke the suspension and impose a sentence in accordance with the provisions of § 19.2-306.1." Code § 19.2-306(C). "The sufficiency of the evidence to sustain an order of revocation 'is a matter within the sound discretion of the trial court.'" *Burford v. Commonwealth*, 78 Va. App. 170, 179 (2023) (quoting *Duff v. Commonwealth*, 16 Va. App. 293, 297 (1993)). "The discretion required is a judicial discretion, the exercise of which 'implies conscientious judgment, not arbitrary action.'" *Id.* (quoting *Duff*, 16 Va. App. at 297). In addition, "revocation hearings are not a stage of criminal prosecution and therefore a probationer is not entitled to the same due process protections afforded a defendant in a criminal prosecution." *Id.* at 180 (quoting *Davis v. Commonwealth*, 12 Va. App. 81, 84 (1991)). "Thus, 'proof beyond a reasonable doubt of [a probation violation] is not required.'" *Id.* (alteration in original) (quoting *Marshall v. Commonwealth*, 202 Va. 217, 221 (1960)). Rather, after suspending "the execution or imposition of sentence," a trial court "may revoke the suspension of sentence for any cause the court deems sufficient that occurred at any time within the probation period, or within the period of suspension fixed by the court." Code § 19.2-306(A).

As an initial matter, we reject Burks's contention that the trial court held him strictly liable. "[T]he judgment of a trial court comes to us on appeal with a presumption that the law was correctly applied to the facts." *Yarborough v. Commonwealth*, 217 Va. 971, 978 (1977). "Only 'clear evidence to the contrary in the record' suffices to rebut the presumption." *Groves v. Commonwealth*, 50 Va. App. 57, 62 (2007) (quoting *Campbell v. Commonwealth*, 39 Va. App. 180, 186 (2002)). Consistent with those principles, "we will not 'fix upon isolated statements of the trial judge taken out of the full context in which they were made, and use them as a predicate

for holding the law has been misapplied.'" *Id.* (quoting *Bullock v. Commonwealth*, 48 Va. App. 359, 368 (2006)). Additionally, "a 'trial court's remark is not, in and of itself, the full context simply because it represents the only point at which the court expressly addressed the issue in dispute.'" *Id.* (quoting *Parker v. Commonwealth*, 41 Va. App. 643, 656-57 (2003)).

Burks's argument hinges upon the trial court's statement that it was "on him to get it done . . . intentional or not, you know." But he leaves out the larger context, which demonstrates that the trial court was not making a ruling of law in this case. Rather, it made the above comment in the course of explicitly asking the parties whether there was an "intent element." The above exchange does not establish that the trial court held Burks strictly liable. The record, viewed as a whole, rebuts any inference that the trial court applied a strict liability standard.

Next, it is well-established that "[t]he cause deemed by the court to be sufficient for revoking a suspension must be a reasonable cause." *Burford*, 78 Va. App. at 180 (quoting *Duff*, 16 Va. App. at 297). Generally, to be a reasonable cause, a probation violation must be willful. *Word v. Commonwealth*, 41 Va. App. 496, 507 (2003); *Duff*, 16 Va. App. at 298-99. Indeed, the Supreme Court has rejected the proposition that a defendant's suspension of sentence may be revoked, and active time imposed when the defendant is completely without fault for violating the conditions of the suspension. *Peyton v. Commonwealth*, 268 Va. 503, 511 (2004).

Here, the record demonstrates that the trial court had reasonable cause to revoke the suspension of Burks's sentence. Although Burks insists that his absences were caused by his inability to use the technology necessary to attend group treatment sessions, the trial court did not have to credit that explanation. Loomis had established an email account for Burks to use and spent a "protracted . . . time" teaching him how to use it to attend the online sessions before Burks sustained any absence as unexcused. Moreover, Burks generally demonstrated his ability to use the requisite technology: his phone contained a received email with sexually charged content, his browser history showed internet searches for strip clubs, and he attended several online group

- 7 -

sessions. In addition, Burks repeatedly disregarded his obligation to attend the group sessions, and when he did attend, he displayed "oppositional behavior, minimization, distortions, and denial." Given those circumstances, the circuit court judge, in assessing witness credibility, could reasonably disbelieve Burks's claims that he was having technological difficulties and conclude that he was prevaricating to conceal his guilt. *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011). This case is unlike *Peyton*, 268 Va. at 511, in which the Supreme Court of Virginia found error where the defendant was removed from a program due to an unforeseen medical condition entirely outside his control. Here, the trial court could reasonably find that Burks's pattern of resistance, selective technology proficiency, and failure to seek excused absences was a product of his own conduct, not of circumstances beyond his control.

Further, the record does not demonstrate that Burks was placed in the "impossible" position of choosing between going to a job interview and attending his group session. Rather, Loomis instructed Burks that if he wanted to miss the group session to attend a job interview, he needed to communicate with his treatment provider to ensure the absence would be excused. He did not do so, and the subsequent absence was deemed unexcused. Burks's argument also fails that Code § 19.2-306.1(A)(ii) required him to prioritize maintaining employment over treatment attendance. The record does not reflect that Burks faced an unavoidable conflict. Loomis provided a clear path to resolving the tension by instructing Burks to contact Dr. Gravers about obtaining an excused absence. Because the conflict was fully avoidable through compliance with his probation officer's instructions, no irreconcilable collision between probation conditions existed. Those circumstances demonstrate another instance in which Burks did not cooperate with but instead disregarded the instructions of his probation officer, resulting in his discharge from the treatment program, and providing "reasonable cause" to support the trial court's revocation of his suspended sentence.

CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*